DETROIT DRIVING CLUB *v.* FITZGERALD.

1. CORPORATIONS—PURPOSES—HOW DETERMINED.

The purposes of a corporation are to be determined by the statements contained in its articles of association.

2. SAME—LEGALITY.

The purposes of an incorporated club, which, as expressed in its articles of association, are "to promote social intercourse among the members, to provide a club house, pleasure grounds, and proper facilities for improving, training, and exhibiting horses at meetings to be held at stated times in each year," are lawful.

3. SAME—STOCKHOLDERS—LIABILITY FOR ASSESSMENT—ESTOPPEL.

A subscriber to the stock of a corporation organized under Act No. 22, Pub. Acts 1883 (3 How. Stat. chap. 163 B), cannot defend an action to recover an assessment on his subscription, upon the ground that the improvements to pay for which the assessment was declared were made before all of the capital stock had been subscribed, and that the corporation issued bonds and mortgages to enable it to carry on the improvements, where, with knowledge of such facts, he participated in the purposes of the corporation, and availed himself of benefits to which stockholders alone were entitled.

Error to Wayne; Carpenter, J.   Submitted April 21, 1896.   Decided June 30, 1896.

*Assumpsit* by the Detroit Driving Club against William H. Fitzgerald to recover an unpaid subscription to

the capital stock of the plaintiff corporation. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*E. T. Wood*, for appellant. ·

*Moore & Moore* (*Otto Kirchner*, of counsel), for appellee.

MOORE, J. The plaintiff was organized under Act No. 22, Pub. Acts 1883, and sued defendant to recover an unpaid subscription of stock. By direction of the court, the jury rendered a verdict in favor of the plaintiff. Defendant assigns error.

In July, 1893, D. J. Campau, after some talk with defendant, presented him with a paper reading as follows:

" Whereas, it is proposed to organize a corporation for the purpose of promoting good fellowship among its members, by providing a clubhouse and pleasure grounds for their entertainment, where at all times they may meet for social intercourse, and further to encourage, by providing the proper facilities, raising, improving, breeding, training horses, at meetings to be held at stated times in each year: Now, therefore, we, the undersigned, for the purpose of such organization, do hereby severally subscribe the sum set opposite our respective names, to its capital stock, and agree to pay the same to said corporation, in installments, as called for from time to time by the board of directors."

The paper bore the signatures of 20 persons at $1,000 each, and one at $2,500. Mr. Fitzgerald signed for $2,-500. Mr. Campau claims that at this time he informed Mr. Fitzgerald that they had organized the Detroit Driving Club; that the corporation expected to have a capital stock of $150,000; that $68,000 was then subscribed; and that they were going ahead to acquire the grounds and buildings, and would not wait for the full subscription. Mr. Fitzgerald denied that he was told by Mr. Campau they were going ahead before the capital stock was all subscribed. The club afterwards bought grounds,

put up buildings, and spent a large sum of money. August 9, 1893, an assessment of 20 per cent. was made on all subscriptions to the capital stock. December 5, 1893, a further assessment of 80 per cent. was made; and the president was directed to let contracts for buildings, and to proceed with the work necessary to hold a race meeting,—the cost not to exceed $100,000. After the 20 per cent. assessment was made, Mr. Fitzgerald did not pay it on his subscription, and, in a conversation with Mr. Campau, said his money was tied up, and had some talk with him to the effect that he had subscribed for more stock than he could take care of, and a little later wrote a letter reading as follows:

"Detroit, Michigan, August 31, 1893.
"D. J. Campau, Esq.,
        "City.

"*Dear Sir:* I rather overreached myself when I subscribed for $2,500 of stock in the D. D., signed in this stringency. I was speaking to Mr. Vail today, and he thought I might reduce my subscription to $1,500, and then, after a while, when money is cheaper, subscribe for more stock, if I desire, and somebody else did not want it. If my subscription can be changed to the above amount, and you will advise me of the same, I will send you a check at once for $300.
        "William H. Fitzgerald."

Mr. Campau replied as follows:

"*Dear Sir:* In answer to your letter of recent date, in regard to reducing your stock subscription in the Detroit Driving Club to $1,500, would say, if you will send your check for $300, being 20 per cent. assessment made on the stock, I will see that the other 10 shares are placed elsewhere.
        "Yours truly,
        "D. J. Campau."

Mr. Fitzgerald sent his check for $300, and a certificate was issued certifying that he had "subscribed for 15 shares of the capital stock of the Detroit Driving Club, at $100 per share, amounting to $1,500, for which certificates of stock will be issued upon the payment of

the amount subscribed, and the surrender of this certificate. The assessments paid are indorsed hereon,"—and indorsed with the $300 payment.

Article 3 of the plaintiff's articles of association reads as follows:

"The purpose or purposes of this corporation is to promote social intercourse amongst the members; to provide for them the convenience of a clubhouse, pleasure grounds, and proper facilities for improving, training, and exhibiting horses at meetings to be held at stated times in each year. The term of existence of this corporation is fixed at 30 years from the date hereof."

Among the by-laws adopted by the association were the following:

"Every member of the club shall pay an initiation fee of $50, excepting subscribers for $500 or more of the original capital stock of the corporation. All such subscribers, who take and pay for the stock thus subscribed for, will be exempt from the initiation fee for membership, so long as they continue to own and hold not less than $500 of said original capital stock in said corporation. A transfer or sale of any amount of said stock will not entitle the person to whom said stock be transferred or sold to membership. Stockholders will not be exempt from payment of annual dues.

"The annual dues shall be $25, payable in advance the first day of January. Members admitted after August 1st in any year shall pay $10 for the remainder of the current year.

"At all racing meetings, members and guests shall wear their badges, so that the same may be readily seen by the officers of the club. Members shall be required, on racing days, to exhibit their badges to the gate keeper at the club entrance, upon entering the club grounds. In case a member shall neglect to bring his badge with him, he may once, but not oftener, during a racing meeting, obtain at the club entrance the temporary use of a badge; such badge to be returned the day following to the secretary, at the city office. No badge can be obtained at the public entrance to the racing grounds. Members without badges, entering at the public gates, must pay the regular entrance fee."

July 2, 1894, the secretary of the club wrote Mr. Fitzgerald as follows:

"*Dear Sir:* Assuming that you desire membership in the club, I inclose bill for dues for 1894, and member's equipment of tickets. Should you not care to become a member this year, you will return the tickets on or before July 10th."

To which, under date of July 7th, Mr. Fitzgerald replied:

"I herewith return tickets sent me July 2d. I do not desire membership under your by-laws."

The corporation acquired about 90 acres of land, with a circular race track a mile in length; with a large grand stand for spectators, a part of which was reserved for the use of members exclusively. In July, 1894, the plaintiff had a racing meeting on the grounds, which lasted for several days. Mr. Fitzgerald attended that meeting, with some of his friends, and occupied a place on the grand stand. With him was Mr. Knight, of Ft. Wayne. Mr. Knight wanted to become a member of the club. Mr. Fitzgerald explained to him how he could do so, and asked Mr. Lee, one of the directors of the club, to send Mr. Knight a membership equipment, and told Mr. Lee that he (Fitzgerald) would pay for it. He also said: "I have got so many friends here, that you might as well send me those season tickets, and I will send you $25 for them," which he did. The tickets and badges were furnished to both of them, Mr. Fitzgerald paying for his,— no initiation fee, but simply the annual dues of $25,— and after this he occupied the part of the stand reserved exclusively for members.

Mr. Fitzgerald claims that when he paid the $300 assessment he did not know that the capital stock had not all been subscribed, or that the plaintiff proposed to issue bonds and a mortgage to enable it to carry on its improvements. The record discloses that he

knew all these things when he procured the tickets, and occupied the part of the grand stand reserved exclusively for members. The defense is put upon several grounds. All the assignments of error have had our attention, but we shall discuss only those that seem to be important.

It is claimed that the business carried on by the plaintiff is illegal,—is not within the scope of its charter, and not authorized by any law of the State. *People* v. *Weithoff*, 51 Mich. 203, and *Schuetzen Bund* v. *Agitations Verein*, 44 Mich. 313, are cited. Neither of these cases is in point. The first of these cases was a criminal case, where the respondent was charged with a violation of an express provision of the statute. The second case was one where there was no law authorizing the existence of the organization, and its purpose was to oppose the enforcement of a *prima facie* valid act of the legislature. The purposes of the corporation or association are to be determined by the statement in its articles of association. *Attorney General* v. *Lorman*, 59 Mich. 157. The purposes of this association were lawful. 2 How. Stat. § 9387; *International Fair, etc., Association* v. *Walker*, 83 Mich. 386.

Another defense, and the only one necessary to be considered, is that the capital stock was not all subscribed. It is suggested that the act under which plaintiff organized (Act No. 22, Pub. Acts 1883) does not require the corporation to have any capital stock, and that it is unlike Act No. 6, Pub. Acts 1889, under which the fair association just referred to organized. We do not need to pass upon that question, for it appears clearly in this case that after the defendant knew the capital stock was not all subscribed, and after he knew all of the assessments upon the capital stock were made, and knew the purposes of the organization and the provisions of its by-laws, and the character of what it was doing, and what it had done in the way of acquiring property and expending money, he participated in its purposes, accepted membership tickets and badges without paying a mem-

bership fee,—paying simply annual dues,—and availed himself of the benefit of being a stockholder to a greater amount than $500. We know of no authority that will allow him, with full knowledge of the facts, to take the benefits and escape the burdens of the position in which he has placed himself. *International Fair, etc., Association* v. *Walker, supra;* Id., 97 Mich. 159; 1 Cook, Stock, Stockh. & Corp. Law, § 52. Upon this question there was no conflicting testimony. It was competent for the court to instruct the jury that upon the conceded facts the plaintiff should recover. *Cobbs* v. *Fire Association*, 68 Mich. 466.

The judgment is affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. LONG, C. J., did not sit.