HANSEN v. BALTIMORE PACKING & COLD-STORAGE CO. et al.

(Circuit Court, D. Minnesota. April 30, 1898.)

1. SALE—RESCISSION BY PURCHASER—FAILURE TO DELIVER.
   Failure of a seller to deliver one of several separate articles covered by a contract of sale will not entitle the purchaser to a rescission.

2. SAME—FALSE REPRESENTATIONS—EXPRESSION OF OPINION.
   A statement of a seller of an interest in property to be transferred to a fishing company, which it was agreed as a part of the contract of sale should be formed by the parties, of the number of pounds of fish that could be taken by the new company in a season, was not a representation, but merely an expression of opinion, upon which the purchaser had no right to rely.

3. CAVEAT EMPTOR.
   A purchaser of property which was open to his inspection cannot rescind because of defects which he might have seen.

4. SAME—ESTOPPEL TO CLAIM RESCISSION.
   A purchaser of property to be used in a business, who, after learning its true condition, retains and uses it until he ascertains that the business will result in loss, cannot then obtain a rescission on the ground of misrepresentation by the seller.

This is a suit in equity by Ferdinand Hansen against the Baltimore Packing & Cold-Storage Company, Edward T. Le Clair, and John F. Locke. Heard on the pleadings and proofs.

Koon, Whelan & Bennett, for complainant.

C. S. Jelley and Harrison & Noyes, for defendants.

LOCHREN, District Judge. Complainant seeks the rescission of a contract expressed in two writings made and dated on the 11th day of September, 1895, whereby he purchased, nominally, of the defendants Edward T. Le Clair and John F. Locke, using the firm name and style of the "Reid Fish Company," one-half interest in the business, plant, and property of the said Reid Fish Company, of all kinds, at Rat Portage, and other places in the district of Rainy river, for the sum of $15,000, payable as stated in said writings; and whereby, further, the parties to said writings agreed that they would form a Canadian corporation, to be called the "Rat Portage Fish Company, Limited," for the purpose of carrying on general fish business in said district of Rainy river, and would transfer to such new corporation the whole of their stock in trade, plant, outfit, and real and personal property, at Rat Portage, and elsewhere in said district, used in the fish business; and that one-half of the stock of such Canadian corporation, when formed, should be allotted to said Ferdinand Hansen, or such person as he might designate, and the other half to the other parties to said contract; and that the Rat Portage Fish Company, when incorporated, should carry on the fish business in said district; and that said Ferdinand Hansen should purchase all caviar manufactured by it, at the price of $35 per standard keg, paying also the cost of the kegs and of making the caviar, and that the other parties to said writings should purchase all fish which the same company should have for sale at the price of three cents per pound; and that agreements

for such purchase of caviar and fish should be made with the Rat Portage Fish Company, when incorporated.

At the time of said transaction the defendant Locke was, and has since been, the president of the defendant the Baltimore Packing & Cold-Storage Company, a Minnesota corporation, doing business at Minneapolis, in the state of Minnesota, and elsewhere, and the defendant Le Clair then was, and since has been, the manager of the same corporation, and the same corporation was the real owner of the business, plant, and property of all kinds of the Reid Fish Company aforesaid, the title to which was held for its use by said Locke and Le Clair, and the said sale to Ferdinand Hansen, and the agreements with him connected with said sale, were, on behalf of the same corporation, negotiated and made by said Le Clair as its manager, although in his own name and that of said Locke, and in the name of the Reid Fish Company; and all the consideration paid therefor by said Ferdinand Hansen was received by the said Baltimore Packing & Cold-Storage Company, to its own use. Ferdinand Hansen, the complainant, was the son of the senior member of the firm of Hansen & Dieckmann, dealers in fish and caviar at Hamburg, and nephew of the senior member of the firm of Dieckmann & Hansen, engaged in the same business at New York. He was a German, and in 1895 was 26 years of age, and had never been engaged in business for himself, but for some two years had been buying, for the said New York and Hamburg firms, caviar and some fish, upon the Delaware river, Lake of the Woods, and upon the Pacific coast, and at other places in the United States and dominion of Canada. In the spring of 1895 the complainant, then engaged in the purchase of caviar for said Hamburg and New York firms, called upon said Baltimore Packing & Cold-Storage Company, at Minneapolis, and conferred with said Le Clair, its manager, about the purchase of its caviar made at the Lake of the Woods; and was informed that the caviar for that year had been contracted to Neilson Bros., of Sandusky, Ohio, who were connected with said Baltimore Packing & Cold-Storage Company in fishing plants on the American side of said lake; and, upon the statement by said Hansen of his desire to arrange for the purchase of caviar to be made in the following year, he was informed by said Le Clair that he had a plan in view for a company to operate a fishing plant on the Canadian side of that lake, but was not then prepared to state the details, as licenses to fish, which would only be granted to Canadian subjects, must be obtained from the Canadian government, and that any connection of other persons with the enterprise must be kept secret, but that Hansen could obtain the caviar that would be made by that company by becoming an owner of its stock. Hansen arranged with said Le Clair to be kept informed of the progress of the enterprise, and while he was at the Lake of the Woods, and in Manitoba and in Oregon, up to the beginning of September, 1895, letters and telegrams passed between Le Clair and Hansen relative to said project; and on September 6, 1895, by appointment, Le Clair and Hansen met at Winnipeg, and Hansen was informed by Le Clair that a Canadian corpora-

tion could be formed to carry on the business of fishing at the Lake of the Woods, in the Rainy Lake district, and licenses for such fishing obtained from the Canadian government, and Le Clair offered and proposed to sell to said Hansen, to be by him put into such new corporation, the business, plant, real and personal property, and outfit of every kind of said Reid Fish Company at Rat Portage, and elsewhere in said district, for the sum of $30,000, and represented that he had paid one Reid, for the same plant, property, business, and outfit, the sum of $22,500, and had added to the property, so that it was worth $30,000, and, at the request of said Hansen, gave him a rough statement, or inventory, of the articles of property to be included in the proposed sale. And said parties discussed the proposed enterprise at length, and the number of licenses and nets that might be used, and said Le Clair expressed a confident belief that the proposed company would obtain in a season 1,000,000 pounds of fish, and 400 kegs of caviar, and desired to have a contract connection with the new company in respect to the fish. Hansen was then given an option of four days to consider the offer of Le Clair, during which time he proposed to go again to Rat Portage, where the real estate and most of the property of the Reid Fish Company was situated; and it was discussed and understood between the parties that Hansen should not, by speech or act, give rise to suspicion that he intended to obtain any interest in the property, as that might defeat the entire enterprise, by making it impossible to obtain the fishing licenses, which would be granted only to Canadian subjects. Hansen and Le Clair then went to Rat Portage together, and remained there, much of the time together, until the night of September 11, 1895. They saw the real estate and buildings upon the same, though no careful examination of the interior of the buildings was made, and also saw or could see the steamboat and barge; and together went over the Lake of the Woods, in a steamboat, from which they saw the buildings of the Reid Fish Company at Stevens Point, and also saw and discussed that portion of the lake in which Le Clair proposed to obtain fishing rights for the next year's fishing. After this examination, the contract of September 11, 1895, was made, as first above stated, and the complainant paid the full consideration for the purchase, at the times and in the manner stated in the bill of complaint.

The Canadian corporation, the Rat Portage Fish Company, Limited, was formed, and licenses to fish in the Lake of the Woods were obtained from the Canadian government before the commencement of the fishing season of 1896; and, by agreement between said Hansen and said Le Clair, one Mallory, a Canadian subject, and friend of Hansen, was employed as manager of the Rat Portage Fish Company, it being intended that Hansen's share of the stock of that company should be held by said Mallory for Hansen. Hansen as well as Mallory went to Rat Portage early in the spring of 1896, to prepare for the season's fishing, when it was found that the nets on hand were neither as many nor as good as Hansen had expected from Le Clair's representation; and in preparing supplies

and outfit Hansen advanced to the new company moneys to the amount of $3,200, and the Baltimore Packing & Cold-Storage Company a still larger amount. But by reason of high water in the Lake of the Woods, or from some other cause, the catch of fish by that company was small, and did not meet the operating expenses, up to October, 1896, by which time the advances of the Baltimore Packing Company to the Rat Portage Fish Company exceeded the sum of $14,000, and Hansen was unable or refused to make further advances, and had during the summer, while stating his own inability to make further advances, requested the Baltimore Packing & Cold-Storage Company to continue to make advances to enable said Rat Portage Fish Company to carry on its business of fishing in said Lake of the Woods. On the 5th of October, 1896, Hansen charged Le Clair with having deceived him in the sale of said fishing property, and with having misrepresented to him the amount and value of said property; and, failing to induce the Baltimore Packing & Cold-Storage Company to repurchase his interest in said property, at an offered very large reduction in its price, thereafter brought this suit.

1. Perhaps the most serious claim of misrepresentation by Le Clair is in respect to the price $22,500, which he stated to Hansen had been paid to Reid for his property, outfit, and business. While Le Clair testifies that this sum was paid Reid on such purchase, his testimony, as well as that of Mr. Reid, is unsatisfactory, in failing to give any details of the bargain or of the payments, and the character and condition of the property, and testimony as to its value, tends to the conclusion that so large a price on that purchase is improbable, if paid in cash, or in property at strictly cash values.

2. The preponderance of the evidence is to the effect that the condition of the title to lot 20, on which the buildings at Rat Portage are situated, was explained to Hansen when the written contracts were made; and there is no evidence that such title may not be obtained for $175, as then stated, and no request has been made of defendants to secure that title.

3. The claim by complainant that defendants agreed to include the engine and boiler then in a steamer at Duluth need not be considered. That property does not appear to be included in the written contracts of September 11, 1895, which writings would supersede prior verbal negotiations, and, if included, the failure to deliver would not be ground for rescission.

4. The alleged representations as to the amount of fish that would be caught, and the amount of caviar that would be made, were merely statements of expectation, opinion, or hope, on which a purchaser has no right to rely. Le Clair refused to guaranty any amount, and there is no charge or proof that he misrepresented the amount of fish caught or caviar made in the past in the Lake of the Woods fisheries.

5. Hansen went to Rat Portage pending the negotiations, and had an opportunity to examine the property he was buying. That he was cautioned not by word or act to disclose his intended purchase cannot be assumed to have been made to prevent him from

making examination, as there was a sufficient and bona fide reason for that caution, which he understood and assented to. But the lots and the buildings at Rat Portage, and the craft on the water, and buildings elsewhere on the lake, were, in the condition in which they were, open to his view, and he had perhaps seen them when there before. He cannot claim deception as to what he must or might have seen.

6. But whatever examination he then made, or failed to make, he certainly learned the condition of all this property early in the spring of 1896, when he went there, and when the Rat Portage Fish Company, under the management of his friend Mallory, was buying nets and adding to the outfit, and getting ready for the season's fishing. Knowing, then, the condition of the property, if he had grounds for rescinding the contract because of misrepresentations, prompt disaffirmance on his part was necessary. Instead of that, he affirmed the contract, and put more of his own money in the business, and called on Le Clair, repeatedly and successfully, to advance moneys on behalf of the Baltimore Packing & Cold-Storage Company, to keep the business running, in the hope that the season's business would still turn out profitable, getting that company to make much more than its share of such advances. And it was not until Le Clair refused further advances unless Hansen would put in his share, and until it had become apparent that the business of the season would result in loss instead of profit, that Hansen sought to rescind the sale, because of alleged misrepresentations. He cannot be permitted, after learning the facts, to speculate, as owner, on the chances of profit in the business, and rescind after it has proven unprofitable. It is quite evident from complainant's testimony that his venture in the fishing business was to place him where he could control and purchase, at a low rate, the output of caviar, which he hoped would reach or exceed 400 kegs per season, and that he gave perhaps less thought or care to the values of the properties of the plant he was buying an interest in than is usual with purchasers. The value of the hoped-for production of caviar was, in his mind, more than that of the real estate, building, and outfit for fishing. His letter to Le Clair, the day after his purchase, shows that he regarded the venture as a speculation in which there was much hazard, and that he considered he was paying a large price for the half interest in the property. That Le Clair, acting for the Baltimore Packing & Cold-Storage Company, did not consider the plant and business as worthless, but was as hopeful of profits as was Hansen, is shown by the fact that he advanced for his company, towards the season's expenses of the Rat Portage Fish Company, nearly as much money as Hansen had paid for the half interest. Decree will be entered dismissing the bill of complaint, with costs.