REID *v.* DETROIT IDEAL PAINT CO.

1. CORPORATIONS—SUBSCRIPTIONS TO INCREASED CAPITAL STOCK—VALIDITY.
    One who agrees to take a certain amount of the increased capital stock of a corporation on condition that a third person take a certain amount, after it has been issued to and accepted by him, is bound to pay for the same, especially where the amended articles are filed before suit is begun for the purchase price.

2. SAME—FILING OF ARTICLES.
    There should be valid and binding subscriptions to stock before articles of incorporation are filed.

3. SAME—LIABILITY ON SUBSCRIPTION—RATIFICATION.
    Where a person subscribes to the increased capital stock of a corporation, his liability to pay does not depend upon his ratification of the agreement after the amended articles are filed.

4. SAME—EVIDENCE—FINANCIAL CONDITION OF CORPORATION.
    On the trial of an issue whether a party subscribed to the increased capital stock of a corporation, testimony as to the subsequent embarrassed financial condition of the corpora tion is immaterial.

5. SAME.
    Testimony by the party, that he would not have kept the stock if he had understood that it was issued to him as testified by a certain witness, is incompetent.

6. SAME—VALUE OF STOCK—SECRET INTENTIONS.
    The liability of one who has subscribed to the increased capital stock of a corporation cannot depend on the value he placed on the stock, or his secret intentions in taking it.

Error to Wayne; Frazer, J. Submitted October 16, 1902. (Docket No. 74.) Decided March 30, 1903.

*Assumpsit* by William Reid against the Detroit Ideal Paint Company for goods sold and delivered, in which defendant sets off a claim based upon a subscription to its capital stock. From a judgment for plaintiff, defendant brings error. Reversed.

*Moore & Moore* (*Henry B. Shaw*, of counsel), for appellant.

*A. G. Pitts* and *O. M. Leonard*, for appellee.

HOOKER, C. J.   On January 1, 1896, a concern going under the name of the Detroit Ideal Paint Company was doing business in Detroit.   It was conducted by one Fuller.   It was held out to be a corporation with $12,000 capital, of which Fuller, his wife, and brother-in-law held all of the shares of stock.   It was in the habit of filing annual reports, as required by law of corporations.   We discover nothing in the record to indicate that it was not a corporation legally organized.   Fuller appears to have had full charge and control of its affairs, the other stockholders having nominal interests.   Reid, the plaintiff, was a creditor of this company for goods sold it, and he was an indorser of its paper given to him as payee for a large amount.   The bookkeeper testified that the total claim exceeded $6,017 on January 1, 1896, as shown by the defendant's books.   Of this $227.79 was an open account, and the remainder on notes outstanding.   The defendant met with a loss by fire on March 8, 1900.   The plaintiff thereupon sued the defendant, and garnished the insurance money.   He recovered a judgment for $2,567.85, and the defendant has appealed.

Upon the trial the defendant claimed some $2,000 and upwards by way of set-off, basing it upon the following allegations of fact, viz.: That about January 1, 1896, the company was largely indebted to Reid, and that he was urging payment; that an arrangement was made to increase its capital stock $7,000, Reid agreeing to take $2,000 of the new stock, provided that one Dr. Olin would take the other $5,000; that this was carried out, a resolution adopted by the stockholders, and entered in the minutes kept of the proceedings of the company, increasing the stock to $19,000, and certificates of stock issued to plaintiff and Dr. Olin; and that plaintiff has never paid

132 MICH.—34.

for the stock. The plaintiff denies that he ever participated in any arrangement whereby he agreed to purchase or pay for stock in the concern, although he does not deny the receipt of a certificate for stock to the amount of $2,000. The court left the question to the jury. The errors assigned relate to the introduction of proof and the charge.

We have no doubt that, if Reid agreed with the defendant company to take $2,000 of additional stock, to be applied on his claim, upon condition that the stock should be increased $7,000, of which increase Dr. Olin should take $5,000, it was a valid engagement, and if subsequently the resolution increasing the capital was duly passed by the stockholders, and the stock issued to Dr. Olin and the plaintiff, and accepted by him as a stockholder, and the concern went on doing business, he cannot now avoid his obligation, especially as the amended articles were filed before this action was begun. The law which requires the filing of articles contemplates that there will be valid and binding subscriptions of stock before filing. See *Anderson* v. *Railroad Co.*, 12 Ind. 376 (74 Am. Dec. 218); *St. Louis Colonization Ass'n* v. *Hennessy*, 11 Mo. App. 555; *Appleton Mut. Fire-Ins. Co.* v. *Jesser*, 5 Allen, 446; *Methodist Episcopal Union Church* v. *Pickett*, 19 N. Y. 482; *Tarbell* v. *Page*, 24 Ill. 46; *Chubb* v. *Upton*, 95 U. S. 665; *Pullman* v. *Upton*, 96 U. S. 328; *International Fair Ass'n* v. *Walker*, 83 Mich. 386, 88 Mich. 62, 97 Mich. 159 (47 N. W. 338, 49 N. W. 1086, 56 N. W. 344); *Detroit Driving Club* v. *Fitzgerald*, 109 Mich. 670 (67 N. W. 899). It was necessary to submit to the jury the question whether Reid agreed to take $2,000 of the additional stock, for while, upon the one hand, there was testimony that tended to prove it, there was also testimony that there was no such agreement.

It is claimed by defendant's counsel that the court instructed the jury that the subscription, sale, and delivery of the stock was void until the certificate of increase was filed with the Secretary of State, and that Reid would not

be liable for the stock unless he knew that the certificate had been filed, and, knowing that, had thereafter agreed to take the stock. Such instructions, if given, were not accurate, as will be seen from the authorities cited, for it cannot be said that his liability depended on his knowledge of the filing and subsequent ratification of the agreement. The charge was not given exactly as claimed, but we think a necessary inference from it is that, unless the jury should find a filing of the articles and a subsequent ratification, the plaintiff cannot be held liable for the stock.

We think that the proof of an embarrassed financial condition of the corporation at a time subsequent to the alleged agreement was immaterial. It was incompetent for Mr. Reid to testify that he would not have kept the stock if he had understood that it was issued as Mr. Fuller had testified. This did not tend to strengthen his denial. It is probable that the defendant was not prejudiced by this evidence, but it is mentioned in view of a retrial.

Complaint is made of the following instructions :

" But Mr. Reid claims that he did not buy this stock at all, and, if he did not, and it has not been transferred to him,— as I stated to you, it must be in writing to make it a lawful transaction,— then this $2,000 would not be allowed, because they owe him, and he has got nothing in pay for it. If he took this stock simply as security, or never valued it as anything, or never intended to take it as stock, then he would not be chargeable with the amount as to the value of the stock."

It was correct to say that, if he took the stock simply as security, the defendant could not set off the value in this action; but his liability ought not to be allowed to turn on the value he placed on it, or upon his secret intentions as to taking it.

The judgment is reversed, and a new trial ordered.

MOORE, GRANT, and MONTGOMERY, JJ., concurred.