INTERNATIONAL HARVESTER CO. OF AMERICA *v.* EATON
CIRCUIT JUDGE.

1. CONTRACTS — PUBLIC POLICY — RESTRAINT OF TRADE — TRUSTS
AND MONOPOLIES.

Under the common law it is no defense to an action upon a
contract which is in itself legal and valid, that the plaintiff
is a trust, monopoly, or combination in restraint of trade.

2. SAME—STATUTES—ACTIONS BY TRUST OR MONOPOLY.

The defense that a foreign corporation is an illegal combina-
tion or trust, within the meaning of Act No. 255, Pub. Acts
1899, or Act No. 329, Pub. Acts 1905, is not available to a de-
fendant in an action of assumpsit for money had and re-
ceived for the benefit of the plaintiff, in a transaction un-
tainted by illegality.

3. CORPORATIONS—MONOPOLY—DEFENSES TO ACTIONS—DE JURE
CORPORATION.

Where the articles of association of a corporation state a pur-
pose for which the statute authorizes a corporation to be
formed, then, if other requirements of the law are complied
with, it is not only a corporation *de facto* but is a corporation
*de jure*, whose organization cannot be attacked or dissolved
except for misuser; and then, only by a direct proceeding by
the State to test its right.

Mandamus by the International Harvester Company of
America to compel Clement Smith, circuit judge of Eaton
county, to vacate an order requiring relator to produce
certain books and papers.   Submitted June 24, 1910.
(Calendar No. 24,024.)   Writ granted September 28,
1910.

*Harry H. Partlow* and *Thomas, Cummins & Nichols*
(*James C. McMath*, of counsel), for relator.

*John L. Wright* (*Elmer N. Peters*, of counsel), for
respondent.

STONE, J.   Relator is a corporation organized and exist-

ing under the laws of Wisconsin. It was first incorporated in 1881 under the name of the Parker-Dennett Harvesting Machine Company, Limited, with a capital stock of $100,000, for the purpose of manufacturing and selling harvesting and other farm machinery. In March, 1882, its name was changed to the Dennett Harvesting Machine Company, Limited. In February, 1883, its capital was increased to $250,000. In December, 1883, it was again increased to $500,000. In November, 1884, the name of the company was changed to the Milwaukee Harvester Company. In April, 1889, the capital stock was increased to $750,000, and in January, 1893, was again increased to $1,000,000, where it has remained ever since. On September 5, 1902, the name of the company was changed to the International Harvester Company of America, which name it now bears. On April 3, 1903, the relator was regularly admitted by the secretary of State of Michigan to carry on its business in this State, in accordance with the provisions of Act No. 206 of the Public Acts of 1901, and, in pursuance of the authority granted it as aforesaid, has conducted its business of selling agricultural implements in this State since that time, and has invested large sums of money in real estate, and warehouses necessary and incident to its business aforesaid. Since its admission to do business in this State, it claims that it has complied with all the requirements of our foreign corporation laws by regularly filing its annual reports; and this claim is not denied by respondent.

In 1907, in the regular course of its business in this State, the relator appointed Fayette De Puy and John Holmes (a copartnership doing business as De Puy & Holmes) its agents for the sale of its products at Grand Ledge and vicinity. During the continuance of this agency—that is, during the spring and summer months of 1907—the said De Puy & Holmes became indebted to the relator in the claimed sum of about $1,500, a large portion of which was for moneys collected by said De Puy & Holmes as agents of relator, and the remainder was for

the purchase price of goods sold and delivered to said De Puy & Holmes by relator during the continuance of the agency aforesaid. Most of this indebtedness remaining unpaid, the relator, on November 12, 1909, commenced an action of assumpsit in the circuit court for the county of Eaton, against said De Puy & Holmes to recover the amount owing to it, as above stated. The declaration was on the common counts. Defendant Holmes made no defense, and his default was regularly entered; but defendant De Puy filed a plea of the general issue with notice of two special defenses, viz.:

(1) That the plaintiff, at the time the indebtedness mentioned was created, was a "trust," as defined by the statutes of this State, and hence any contract made by defendant with the plaintiff was null and void, and against public policy. That the said plaintiff is a corporation organized and existing under the laws of the State of Wisconsin. That the purpose of said corporation is, to wit, the control of the manufacturing of all harvest machinery and other agricultural implements, to carry out restrictions in trade of the said agricultural implements, to limit or reduce the price of said implements, to prevent competition in the manufacture of said implements, to fix the price to the consumer, thereby controlling and establishing the price to the public at large by entering into an agreement whereby it has bound itself with the several harvester companies not to sell any of their or its manufactured products below a certain standard, by them and the plaintiff fixed. That the plaintiff is a pool and combine, whereby the interest of all, or nearly all, of the great harvester companies of the world are united, and the interest of all such companies is fixed by the said plaintiff. And that the plaintiff thereby fixes and controls the price of their products.

(2) That the plaintiff had never filed a copy of its articles of incorporation with the secretary of State of the State of Michigan, or paid the lawful fees by it to be paid, before doing business in this State, and hence any contract made by defendant with the plaintiff was null and void, and could not be enforced.

We note in passing that the second allegation of the notice is in direct conflict with the relator's petition for

mandamus (Petition, par. 2), which paragraph of petition is admitted to be true, in the answer of respondent.

After issue was thus joined, defendant De Puy filed a petition under Circuit Court Rules 50–57 (124 Mich. xxxviii [87 N. W. vi]), first reciting in substance the defenses above mentioned, and then alleging that it was necessary, to enable him to prepare for trial, that the books, records, documents, and papers of the plaintiff (relator) showing the names of its stockholders, the amount of stock held by each, the names of its officers, the total amount of property in Michigan from 1903 to 1909, the total amount of property owned by it from 1903 to 1909, the total amount of business done by it from 1903 to 1909, the total amount of business done by it in Michigan from 1903 to 1909, also the number and location of factories, also the records of its stockholders' and directors' meetings from 1903 to 1909, or sworn copies thereof, be produced, and deposited with the clerk of said court, and that all proceedings in the suit of the plaintiff be stayed until such books, records, etc., were produced as prayed for. The petition contained an averment, upon information and belief (in addition to the special defenses set up under the plea of the general issue), that plaintiff (relator) had increased from time to time the proportion of its capital stock represented by property and business in Michigan, and had not, within 30 days after such increase, filed a statement showing such increase with the secretary of State. We note again the fact that in its petition for mandamus the relator avers that it has in all respects complied with the laws of this State, governing the business of foreign corporations in the State. The answer of respondent does not deny the averment. *Berube* v. *Wheeler*, 128 Mich. 32 (87 N. W. 50); *Barlow* v. *Riker*, 138 Mich. 607 (101 N. W. 820). After hearing the said petition of defendant De Puy, the respondent granted the order prayed for, whereupon the relator formally moved the respondent to vacate such order, which motion of relator was denied. Relator filed its pe-

tition in this court for a writ of mandamus to compel the respondent to vacate and set aside the order above mentioned; an order to show cause was issued and served; and respondent has made a return substantially admitting all of the material averments of relator's petition.

At the outset it may be well for us to distinguish this case from the several cases in this court cited by respondent's counsel, to the proposition that contracts of an unlicensed foreign corporation made in this State are illegal, and that such corporations will be denied the aid of our courts in enforcing such contracts. Most of the cases cited are insurance cases, in which the contracts were expressly prohibited, and some of them are cases of foreign mercantile corporations, in which the statute expressly declared that such contracts should be void. Such corporations have sometimes been spoken of as having no legal existence here, and as having no standing in our courts. Among such cases are the following: *Richardson* v. *Buhl,* 77 Mich. 632 (43 N. W. 1102, 6 L. R. A. 457); *Seamans* v. *Temple Co.,* 105 Mich. 400 (63 N. W. 408, 28 L. R. A. 430, 55 Am. St. Rep. 457); *People's Mut. Benefit Society* v. *Lester,* 105 Mich. 716 (63 N. W. 977); *Swing* v. *Weston Lumber Co.,* 140 Mich. 344 (103 N. W. 816); *Swing* v. *Cameron,* 145 Mich. 175 (108 N. W. 506, 9 L. R. A. [N. S.] 417).

It was, however, held in *People* v. *Hawkins,* 106 Mich. 479 (64 N. W. 736), that an agent of a foreign corporation could not defend a charge of embezzlement, upon the ground that the corporation was prohibited from doing business in this State, by reason of noncompliance with the statutory conditions.

We are here dealing with a corporation that is alleged to be a "trust" or monopoly; one, however, which, as appears by its articles of incorporation, was lawfully organized for a legitimate purpose and business, under the laws of Wisconsin. It has complied with the laws of this State regulating foreign corporations. It comes into a court of this State, and sues upon an independent collat-

eral contract, made with defendant, an agent, in this State—a contract in no way tainted with the illegality of the alleged trust or combination, and one not prohibited by our statute. Can the defense here sought to be imposed be maintained? Assuming, as contended, that the alleged combination was illegal if tested by the principles of the common law, still it would not follow that the defendant could refuse to pay for goods bought by him under special contract with plaintiff. The illegality of such combination and "trust" would not prevent the plaintiff corporation from selling goods that it obtained even from its constituent companies or either of them. It could pass title by sale to any one desiring to buy, and the buyer could not justify a refusal to pay for what he bought and received by proving that the seller had previously, in the prosecution of its business, entered into an illegal combination with others in reference generally to the sale of articles or products. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540 (22 Sup. Ct. 431). This was an action brought upon contract between the parties, which was itself legal and entirely collateral to any illegal combination. It was sought there by special defense to defeat the action by showing that the plaintiff was a "trust" or combination, and the Supreme Court of the United States held that the defense could not be maintained. The court cites *Strait* v. *National Harrow Co.*, 51 Fed. 819, and *Kiff* v. *Youmans*, 86 N. Y. 329 (40 Am. Rep. 543). Justice Harlan said:

"In *National Distilling Co.* v. *Importing Co.*, 86 Wis. 352 (56 N. W. 864, 39 Am. St. Rep. 902), which was an action to recover the price of goods sold and delivered, one of the defenses was that the plaintiff was a member of an illegal 'trust' or combination to interfere with the freedom of trade and commerce. The supreme court of Wisconsin said:

" 'The first defense does not deny any allegation of the complaint, but the substance of it is that the sale and delivery of the goods in question to the defendant was void as against public policy, because the vendor was at the time a member of an unlawful

trust or combination, formed to unlawfully interfere with the freedom of trade and commerce, and in restraint thereof, and to accomplish the ends therein set forth. * * * Conceding, for the purposes of this case, that the trust or combination in question may be illegal, and its members may be restrained from carrying out the purposes for which it was created by a court of equity in a suit on behalf of the public, or may be subject to indictment and punishment, there is, nevertheless, no allegation showing or tending to show that the contract of sale between the plaintiff and defendant was tainted with any illegality, or was contrary to public policy. The argument, if any the case admits of, is that, as the plaintiff was a member of the so-called "trust" or "combination," the defendant might voluntarily purchase the goods in question of it at an agreed price, and convert them to its own use, and be justified in a court of justice in its refusal to pay the plaintiff for them, because of the connection of the vendor with such trust or combination. The plaintiff's cause of action is in no legal sense dependent upon or affected by the alleged illegality of the trust or combination, because the illegality, if any, is entirely collateral to the transaction in question, and the court is not called upon in this action to enforce any contract tainted with illegality, or contrary to public policy. The mere fact that the plaintiff is a member of a trust or combination, created with the intent and purposes set forth in the answer, will not disable or prevent it in law from selling goods within or affected by the provisions of such trust or combination, and recovering their price or value. It does not appear that it had stipulated to refrain from such transactions. A contrary doctrine would lead to most startling and dangerous consequences.'

"That case was cited * * * in *Dennehy* v. *McNulta*, 86 Fed. 825, 827, 829, 30 C. C. A. 422 (41 L. R. A. 609). * * *

"It is undoubtedly the general rule that a contract made in violation of a statute is void, and no recovery can be had upon it; as in *Embrey* v. *Jemison*, 131 U. S. 336, 348 (9 Sup. Ct. 776). That was an action upon a promissory note given in execution of a contract for the purchase of 'future delivery' cotton, neither the purchase nor delivery of the actual cotton being contemplated by the parties, but the settlement in respect to which was to be on the basis of the 'difference' between the contract price and the market price of cotton futures, according to the fluctuations in the market. The contract was held to be a wagering contract, and therefore illegal and void."

See, also, *Miller* v. *Ammon*, 145 U. S. 421 (12 Sup.

Ct. 884); *McMullen* v. *Hoffman,* 174 U. S. 639, 654 (19 Sup. Ct. 839).

Assuming therefore that relator is a "trust" or monopoly as defined by our laws, its independent or collateral contracts, such as is sued on in this case, are just as valid and enforceable as are the contracts of any other person or corporation, unless some statute has changed the rule of the common law in that respect. The only statutes touching the matter are Act No. 255, Pub. Acts 1899, and Act No. 329, Pub. Acts 1905. Subdivision 5 of section 1 and sections 2, 3, and 8 of the act of 1899 are here referred to. Act No. 329 of 1905 is entitled:

"An act relative to agreements, contracts and combinations in restraint of trade or commerce."

It is declared to be supplementary to, and declaratory of, and in addition to, Act No. 255, Pub. Acts 1899. Its first five sections are material here, and are referred to. Neither of the acts undertakes to prohibit or forbid the making of such contracts as the one involved in this suit. It is evident that by the language of section 8 of the act of 1899, and section 5 of the act of 1905, above referred to, the legislature did not leave to inference or implication the illegality of the particular contracts which it was dealing with.

The language of Justice Harlan, in *Connolly* v. *Union Sewer Pipe Co., supra,* where he deals with the special defense in that case based upon the "Sherman anti-trust act," is pertinent here:

"The special defense based upon Act Cong. July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], was also properly rejected. * * * Much of what has just been said in reference to the first special defense, based on the common law, is applicable to this part of the case. If the contract between the plaintiff corporation and the other named corporations, persons, and companies, or the combination thereby formed, was illegal under the act of congress, then all those, whether persons, corporations, or associations, directly connected therewith, be-

came subject to the penalties prescribed by congress. But the act does not declare illegal or void any sale made by such combination, or by its agents, of property it acquired or which came into its possession for the purpose of being sold; such property not being at the time in the course of transportation from one State to another or to a foreign country. The buyer could not refuse to comply with this contract of purchase upon the ground that the seller was an illegal combination which might be restrained or suppressed in the mode prescribed by the act of congress; for congress did not declare that a combination illegally formed under the act of 1890 should not, in the conduct of its business, become the owner of property which it might sell to whomsoever wished to buy it. So that there is no necessary legal connection here between the sale of pipe to the defendants by the plaintiff corporation and the alleged arrangement made by it with other corporations, companies, and firms. The contracts under which the pipe in question was sold were, as already said, collateral to the arrangement of the combination referred to, and this is not an action to enforce the terms of such arrangement. * * * In the case of *The Charles E. Wisewall,* 74 Fed. 802, which was a libel *in rem* by certain tug owners against a steam dredge to recover the value of certain services rendered by the tug in towing the dredges, it was sought to avoid payment for the services thus rendered upon the ground that the tug owners were members of an association which was illegal and void under the Sherman act. The court, assuming that the agreement by which the tugs acted in unison was prohibited by that act, said:

"'He (the claimant) should not be permitted to repudiate his just debts to the individual tugs because their association was illegal. Having asked for their services, and having accepted the benefit thereof, he should pay. * * * An agreement by the tug Mayflower to tow the dredge Wisewall, for a reasonable sum, from Albany to Troy, is not void because the Mayflower is associated with other tugs to regulate the price of towing at Albany. Should the claimant purchase a pair of trousers at an Albany clothing shop, he would find it difficult to avoid paying their actual market price because the vendor and other tailors of that city had combined to keep up prices.'

"Nor can the defendants refuse to pay for what they bought upon the ground that the seventh section of the

Sherman act gives the right to any person 'injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful' by the act to sue and recover treble the damages sustained by him.   We shall not now attempt to declare the full scope and meaning of that section of the act of congress.   It is sufficient to say that the action which it authorizes must be a direct one, and the damages claimed cannot be set off in these actions based upon special contracts for the sale of pipe that have no direct connection with the alleged arrangement or combination between the plaintiff and other corporations, firms, or companies. Such damages cannot be said, as matter of law, to have directly grown out of that arrangement or combination. * * * If the act of congress expressly authorized one who purchased property from a combination organized in violation of its provisions to plead, in defense of a suit for the price, the illegal character of the combination, that would present an entirely different question.   But the act contains no such provision."

*Chicago Wall Paper Mills* v. *General Paper Co.*, 147 Fed. 491, 78 C. C. A. 607.   It was held there that a contract for the sale of merchandise is not rendered illegal by the fact that the selling corporation is a "trust" or monopoly organized in violation of law, either Federal or State; the contract of sale being collateral and having no direct relation to the unlawful scheme or combination.   The following cases are cited:  *Hopkins* v. *U. S.*, 171 U. S. 578 (19 Sup. Ct. 40);  *Anderson* v. *U. S.*, 171 U. S. 604  (19 Sup. Ct. 50);  *Star Brewery of Chicago* v. *U. S. Breweries Co.*, 121 Fed. 713, 58 C. C. A. 133;  *Harrison* v. *Refining Co.*, 116 Fed. 304, 53 C. C. A. 484 (58 L. R. A. 915).   This case was in the seventh circuit.   Opinion by Jenkins, C. J., and concurred in by Grosscup and Humphrey.   The opinion commences with the following language:

"The objection that the appellee is an illegal trust or monopoly condemned by the law of the State of Illinois, and so declared by the supreme court of that State, cannot be sustained.   We have held, in the case of an injurious combination of the nature here asserted, that *the rem-*

*edy is by direct proceedings;* that with respect to a contract which is independent of the illegal combination, and is merely incident to other and innocent purposes, one who voluntarily and knowingly deals with parties so combined cannot on the one hand take the benefit of his bargain, and on the other hand defend against the contract on the ground of the illegality of the combination. *Dennehy* v. *McNulta,* 30 C. C. A. 422, 86 Fed. 825 (41 L. R. A. 609). See, also, *National Folding Box & Paper Co.* v. *Robertson,* 99 Fed. 985.''

Reference is also made to *Connolly* v. *Sewer Pipe Co., supra. Hadley-Dean Plate Glass Co.* v. *Highland Glass Co.,* 143 Fed. 243, 74 C. C. A. 462, opinion by Van Devanter, C. J., concurred in by Judges Hook and Lochren. The Highland Glass Company, a Pennsylvania corporation, engaged in manufacturing glass in that State, received and accepted an order for the manufacture and delivery of glass from the Hadley-Dean Glass Company, a Missouri corporation. There was some evidence tending to show that at the time of making the contract the plaintiff and others, not including the defendant, were in an unlawful combination to stifle competition to the sale of glass, and to arbitrarily control its price, and because of this it was contended that in directing a verdict for the plaintiff the court failed to give effect to the anti-trust statute of Missouri, and to the anti-trust legislation of congress. After holding that, as to the said statute, it could have no application to the contract under consideration without impinging upon the exclusive authority of congress to regulate commerce among the several States, the court proceeds to consider the '' Sherman anti-trust act,'' and quotes therefrom, and proceeds in the following language:

'' That it does not render illegal or prevent a recovery on this contract is shown by *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540 (22 Sup. Ct. 431).''

The only provision in either the act of 1899 or 1905 which gives any force to the claim that the collateral con-

tracts of "trusts" and monopolies are void and unenforceable in this State, is that contained in section 3 of the act of 1899, which in substance provides that "every foreign corporation violating any of the provisions of this act is hereby denied the right, and prohibited from doing business in this State; and it shall be the duty of the attorney general to enforce this provision by bringing proper proceedings in quo warranto," and the provision of section 4, act of 1905. There is not a word in either statute that gives a purchaser of goods the right to plead these statutes as a defense. As we have already indicated, it is not contended but that the relator is duly and regularly organized as a corporation under the laws of Wisconsin, and that its articles of incorporation state a purpose entirely lawful and legitimate. The notice of special defense, in effect and substance, is that, although the relator was duly and legally incorporated under the laws of Wisconsin authorizing the formation of corporations for a perfectly legitimate and lawful purpose, and although its articles of incorporation state a purpose in compliance with such laws, nevertheless the *real purpose* of the incorporation was unlawful, viz., to carry out restrictions in trade and commerce, contrary to the common and statute law. In short, to create a "trust" or monopoly.

If the articles of the relator state a purpose for which the statute authorizes a corporation to be formed, then, if other requirements of the law are compiled with, it is not only a corporation *de facto*, but it is a corporation *de jure*. In such a case the illegality of its organization cannot be attacked at all, and it can only be shown that the corporation is guilty of a *misuser* of its corporate franchises by attempting, under the guise of a legal corporate existence, to conduct a business not authorized by its charter, or in a manner contrary to law, or some principle of public policy; and this by a direct proceeding to test its right. *Attorney General* v. *Lorman,* 59 Mich. 162 (26 N. W. 311, 60 Am. Rep. 287); *Detroit Driving Club* v. *Fitzgerald,* 109 Mich. 675 (67 N. W. 899); 2 Morawetz

on Private Corporations (2d Ed.), § 758; *Blair* v. *City of Chicago*, 201 U. S. 450 (26 Sup. Ct. 427). The rule that, where a corporation is incompetent by its charter to do an act, a private party cannot raise the question, but the sovereign alone can object, in a direct proceeding instituted for that purpose, applies here. This rule has frequently been applied to *ultra vires* acts of national banks. *National Bank* v. *Matthews,* 98 U. S. 621.

In conclusion, we quote the following from 10 Cyc. p. 256:

"This brings us to the doctrine, founded in public policy and convenience and supported by an almost unanimous consensus of judicial opinion, which is that rightfulness of the existence of a body claiming to act, and in fact acting in the face of the State, as a corporation, cannot be litigated in actions between private individuals, or between private individuals and the assumed corporation, but that the rightfulness of the existence of the corporation can be questioned only by the State; in other words, that the question of the rightful existence of the corporation cannot be raised in a collateral proceeding."

More than 100 cases are cited in the note from 30 States of the Union and United States Supreme Court. The Michigan cases are *Montgomery* v. *Merrill,* 18 Mich. 338; *Toledo, etc., R. Co.* v. *Johnson,* 49 Mich. 148 (13 N. W. 492); *Wyandotte Electric Light Co.* v. *City of Wyandotte,* 124 Mich. 43 (82 N. W. 821).

It seems very clear to us that persons who buy goods or receive services from members of a combination cannot interpose the defense that the plaintiff is a party to an independent combination in restraint of trade in no way affecting the contract sued upon, unless, as in some few States, there is an explicit statutory provision creating such a defense; and that there is no such statutory provision in Michigan.

We are of opinion that the claimed defense is not available to, and cannot be maintained by, the defendant in the pending suit.

It follows that the order made by the respondent should be vacated, and the writ of mandamus will issue as prayed for in relator's petition, with costs to the relator against the defendant De Puy.

BIRD, C. J., and OSTRANDER, HOOKER, and BLAIR, JJ., concurred.