HARRIS v. LASALLE FIRE INSURANCE COMPANY

———

(————.  Opinion and Decree.)

———

(*Syllabus by the Court*)

1. **Louisiana Digest—Corporations—Par. 6, 38.**

Subscribers to the capital stock of private corporations are bound by the provisions of law affecting the corporation.

2. **Louisiana Digest—Corporations — Par. 44, 46, 48; Insurance—Par. 8.**

When a subscriber to stock in an insurance corporation, in common with other subscribers, delays payment of his subscription beyond the time the law allows the corporation for the collection of its subscribed capital, thus contributing to the necessity of the corporation amending its charter by reducing its authorized capital to the amount paid in, in accordance with law, the subscriber can not complain of the inability of the corporation to make immediate delivery of a stock certificate, nor justify his refusal to pay for his stock upon that ground.

Appeal from Civil District Court, Division "C". Hon. E. K. Skinner, Judge.

Action by M. D. Harris against The La Salle Fire Insurance Company, Inc.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

John R. Perez, of New Orleans, attorney for plaintiff, appellee.

Anna Judge Veters, Joseph A. Breaux, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J. This is a suit to rescind a subscription to the capital stock of the defendant corporation and for return of the money paid on account thereof. Defendant reconvenes claiming the balance due on the subscription. From a judgment against it, defendant appeals.

Plaintiff subscribed to twenty-five shares of the capital stock of the Liberty National Fire Insurance Company of New Orleans, whose charter was subsequently, by proper proceedings, amended and the name changed to the La Salle Fire Insurance Company, defendant herein. He gave the corporation three notes of $625.00 each maturing at short intervals in settlement of his subscription. The first note was paid when due, but the second and third were not met promptly and an extension requested and declined. Finally plaintiff sent his check for $1250.00 to defendant. The check bore the following inscription on its face: "Balance due on $1875.00 worth of stock and payment in full of the two notes, $625.00 each, due 12/16/21." Defendant, before attempting to cash the check, doubtless being influenced by the inscription on the face of the check, wrote plaintiff that there was $32.71 also due as interest on the notes. Whereupon, plaintiff wrote defendant authorizing draft on him (he resided in Homer, La.) for the balance but stipulating that the stock certificate for the twenty-five shares be attached to the draft. Defendant replied that it could not deliver a permanent certificate because it had been forced to reduce its capital stock due to the failure of plaintiff and a number of others to pay promptly their subscriptions to stock, but that an ad interim certificate would be issued and a permanent certificate given later when a sufficient amount of money was realized from delinquent subscribers to warrant an increase of the capital stock. It appears that the original amount of the capital stock was fixed at $750,000.00, but that at the expiration of one year only $568,590.00 had been paid in. It was therefore necessary that the capital of the company be reduced to the amount paid in, which was done. See Act 203 of 1908, Section 2.

Plaintiff was fully advised of the situation some time before the capital was reduced and before the date of maturity of his notes, as appears by the following correspondence:

"Nov. 21, 1921.
"The La Salle Fire Ins. Co.,
    "New Orleans, La.
"Dear Sirs:
    "I have your notices that I am due 2 notes Dec. 16. I would like to have a one-year extension on same if possible as cash money is scarce at present and I am sure the company has to have interest bearing paper too. Please advise me if I may be allowed this extension.
    "Yours very truly,
        (Signed) "M. D. HARRIS."

To this letter defendant replied:

"Dec. 2, 1921.
"Mr. M. D. Harris,
    "Homer, La.
"Dear Sir:
    "Replying to your letter of the 21st ultimo, concerning your two notes for $625.00 each, representing balance due on your subscription for twenty-five shares of our stock, which will be due Dec. 16th, we note what you say and beg to advise that under the terms of our charter, regulated by law, we have only until next February in which to make collection of balances due on our subscribed capital or be

forced by resolution of stockholders to reduce capital by amendment to charter. * * * Over $500,000.00 of our subscribed and authorized capital of $750,000.00 has already been paid in. * *

"Yours very truly, etc."

Plaintiff, nevertheless, sent his check to defendant on June 7, 1922, for the principal of his notes, and it was only when defendant insisted upon collecting the interest on the notes that the demand for immediate delivery of stock was made.

So far as this suit is concerned plaintiff by his subscription to stock in the defendant corporation was just as much a stockholder as though he possessed a certificate of stock.

"Since a certificate of stock is not the stock itself, but merely evidence of the ownership thereof, and is not necessary to make one a stockholder, with all the rights and subject to all the liabilities of a stockholder, the general rule is that the issue or tender of a certificate is not a condition precedent to the liability of a subscriber to stock on his subscription."

Corpus Juris, Vol. 14, p. 550.

See also Fletcher on Corporations, Vol. 2, p. 1297, where the following occurs:

"A certificate is merely evidence of the holder's ownership of stock and is not at all necessary to make one a stockholder. It is well settled that the issue or tender of a certificate of stock is not a condition precedent to the right of a corporation to levy assessments or maintain an action on subscription for stock."

The sole complaint of plaintiff is his inability to obtain immediate possession of a permanent stock certificate. This deprivation, it is contended, is sufficient cause to rescind the agreement of plaintiff to buy the stock of the defendant company. We are referred to the following authorities:

"Subscriptions for stock which the corporation has no power to issue at all, as in the case of a contract calling for an issue of stock in excess of the authorized capital stock, are void both on the grounds of illegality and of want of consideration. Even though the president and directors may have power to authorize an additional issue, yet, until they exercise this power, any issue after the original limit has been filled will be void, and a subscription therefor unenforceable." Citing McCord vs. Ohio, etc., Railroad Co., 13 Indiana 220. C. J., Vol. 14, p. 530.

"A subscription to the capital stock of a corporation which it has no capacity to issue is a nudum pactum and hence not enforceable." Marion Trust Co. vs. Bennett, 82 N. E. 782.

"A subscriber for an increase of stock is not liable on his subscription unless the amended articles providing for the increase have been filed." Reid vs. Detroit Ideal Paint Co., 94 N. W. 3.

"A subscriber may be discharged by refusal or failure of the corporation to issue or tender to him a certificate of stock." In re Beaunisne, 182 Ill. A. 238.

All these decisions relate to the subscription for stock which the corporation had no power to issue at the time of the subscription to stock sold in excess of legally authorized amount, or to increased issues which have not met the legal requirements. In the instant case the only reason there is no certificate available for immediate delivery to plaintiff is due to his fault in conjunction with the fault of other subscribers who, like plaintiff, failed to pay their subscriptions in time to avoid the necessity of reducing the capital stock in conformity with law. Plaintiff

was warned that this action by the defendant would be necessary and urged to pay up in order to help to get the capital stock fully subscribed. If plaintiff had paid promptly he would have had his certificate delivered to him at once, just as others who paid their subscription received theirs. He was, of course, bound by any provision of law, which affected the corporation for whose stock he had subscribed, and can not complain of the effect of the application of the law to the affairs of the corporation. It does not appear whether the defendant corporation has prospered or not, nor is it material. However, if a subscriber may, by his failure to pay promptly, contribute to a situation requiring a reduction in the authorized capital of corporation to the amount paid in and then demand immediate delivery of his stock certificate as a condition of the payment of his subscription (a condition he knows can not be met) a very convenient method of repudiation of stock subscriptions would result. Assuming the corporate stock to have depreciated in value, subscribers who paid promptly would be penalized for having discharged their obligations.

We conclude that the case is with defendant and therefore the judgment appealed from is reversed, and it is now ordered that there be judgment dismissing plaintiff's demand.

It is further ordered that there be judgment against plaintiff, M. D. Harris, and in favor of defendant on its reconventional demand in the sum of $1250.00 with 6% interest from December 16, 1920, until paid, with 10% attorney's fees and all costs.