CONTINENTAL VARNISH & PAINT CO. *v.* SECRETARY OF STATE.

1. CORPORATIONS— INCREASE OF CAPITAL STOCK—CERTIFICATE— REQUISITES—RECORD.

Section 2, subd. 4, of the act relating to manufacturing companies (2 Comp. Laws, § 7037 *et seq.*), provides that, when the capital stock of any such corporation is increased or diminished, the president and a majority of the directors shall make a certificate thereof for record in the office of the secretary of state. Section 17 declares that the articles of association may be amended, by a vote of two-thirds of the capital stock, in any manner not inconsistent with the provisions of the act, but that such amendment shall not become operative until a copy of the resolution, signed by the president and secretary, shall have been duly recorded. Section 38 authorizes the corporation, by a vote of three-fourths of its stock, to amend its articles so as to issue preferred and common stock, "in the same manner and with the same effect as is now provided by section 17." *Held*, that sections 17 and 38 do not nullify the provision of section 2 as to increasing the capital stock, and that, where a corporation undertakes to increase its capitalization by providing for the issuance of preferred stock, the certificate of amendment must be signed by the president and a majority of the directors in order to be entitled to record.

2. SAME—PREFERRED STOCK—AUTHORIZATION.

Under the provision of section 38 that the preferred stock of any such company shall at no time exceed two-thirds of the actual capital paid in, no preferred stock can be authorized

by amendment of the articles beyond two-thirds of the amount of capital actually paid in at the time of such amendment. ·

3. SAME—UNSUBSCRIBED STOCK.

While the act does not in terms require the entire capital stock of the corporation to be subscribed as a condition precedent to the exercise of corporate functions, it clearly contemplates such subscription, and where the articles of association of any such corporation, or certificates of amendment thereto purporting to increase its capital stock, fail to show that the entire authorized capital stock, preferred as well as common, has been subscribed, the secretary of state is justified in refusing to record them.

*Mandamus* by the Continental Varnish & Paint Company to compel Fred M. Warner, secretary of state, to record a certificate of amendment to relator's articles of association. Submitted October 8, 1901. Writ denied November 12, 1901.

The relator was ·organized July 3, 1900, under chapter 188, 2 Comp. Laws (being Act No. 232, Pub. Acts 1885), with a capital stock of $10,000, divided into 1,000 shares, of $10 each. January 4, 1901, at a duly-called meeting of the stockholders, a resolution was adopted to increase the capital stock to $100,000, and the number of shares to 10,-000, and a certificate thereof was duly filed in the office of the respondent. February 4, 1901, at another duly-called meeting of the stockholders, it was resolved to increase the stock to $150,000, of which $50,000 was to be preferred, and represented by 5,000 shares, and $100,000 common, represented by 10,000 shares. The resolution further provided:

"Said preference stock, as issued by said company, shall at no time exceed two-thirds of the actual capital paid in, and shall be subject to redemption at par at a time certain, to be fixed by the by-laws of said corporation, and to be expressed in the certificates therefor."

A certificate, signed by the president and secretary of relator, containing the resolution of February 4th, was

presented to the respondent for record in his office. He declined to receive and record it, claiming that neither the certificate nor the resolution was in compliance with the law.

*Warner & Codd,* for relator.

*Horace M. Oren,* Attorney General, for respondent; submitting the brief of *Samuel A. Kennedy,* corporation clerk in respondent's office.

GRANT, J. *(after stating the facts).* 1. The relator sought to accomplish two objects by the resolution of February 4th, viz., the increase of the capital stock, and the division of the stock into "common" and "preferred." Subdivision 4 of section 2 of the act (2 Comp. Laws, § 7038) provides that, when the capital stock of the corporation is increased or diminished, the president and a majority of the directors shall make a certificate thereof. The certificate in this case was signed by the president and secretary, and not by any of the directors. Section 17 (2 Comp. Laws, § 7053) provides that the articles of association may be amended, by a vote of two-thirds of the capital stock, in a manner not inconsistent with the provisions of this act, but such amendment shall not become operative until a copy of the resolution, signed by the president and secretary, shall have been recorded. Section 38 (2 Comp. Laws, § 7073) provides for the issue of "common" and "preferred" stock. The closing paragraph of that section provides that, by a vote of three-fourths of its stock, such corporation may amend its articles so as to issue preferred and common stock, "in the same manner and with the same effect as is now provided by section 17 of this act, relating to amending articles of association." There is nothing in section 38 authorizing an increase of the capital stock. If the corporation desires to increase its capital stock, and at the same time to provide for the two kinds, it must proceed under subdivision 4 of section 2, and present a certificate to be filed

as required by that section. Sections 17 and 38 do not nullify the provisions of section 2 as to increasing the capital stock. They refer to other amendments than those increasing or diminishing the stock. The certificate, therefore, was not in compliance with the statute.

2. The statute (section 38; 2 Comp. Laws, § 7073) provides that the preferred stock shall at no time exceed two-thirds of the actual capital paid in. It is conceded that the entire stock has not been paid in, and that the issue of $50,000 of preferred stock would be in violation of the statute. The relator, however, contends that it is entitled to have the amendment recorded and filed, and that the restriction then limits the directors in issuing the preferred stock to an amount not exceeding two-thirds of the capital stock as it may from time to time be paid in. We do not think this the proper construction. The resolution increasing the capital stock to $150,000, and providing for preference shares, does not state how much of the capital has been paid in. The original articles, as filed, are required to show the amount of capital actually paid in. The annual report of the corporation requires a similar statement. But after one report is filed there is no public record of the payment of any more capital stock until the next annual report. Dishonest directors, if the contention of the relator be sustained, might during this time issue the whole of the preferred stock upon their assurance to its purchasers that the whole capital stock was paid. The entire preferred capital stock might be sold at the same time to different parties. In such case it would be impossible to tell what stock was issued first, and what, therefore, was in violation of law. We think it was the purpose of the law to render impossible such a condition of affairs, and that the law means that no preferred stock can be authorized beyond two-thirds of the amount of capital actually paid in at the time of authorizing the issue. This construction prevents any opportunity on the part of dishonest directors to commit fraud, and imposes no hardship or inconvenience. The stockholders are presumed to

know the condition of the company, and how much money they want to borrow by the issue of preferred stock in order to continue business. Should they desire to raise more money in the same manner, another meeting can be called.

3. The other remaining question is, Must the entire capital stock of a corporation, under this act, be subscribed, or can three or more corporators subscribe for one-tenth of the capital stock, pay that in, and then say that they are a duly-organized corporation? It does not need much argument to demonstrate the fallacy of this position. The capital stock in many cases is the chief asset of the corporation. The theory is that those dealing with it have the right to assume that this stock is all in the hands of *bona fide* subscribers, liable to assessment to pay the debts of the corporation. There is no statute in this State prohibiting a corporation from incurring debts or borrowing money until all its stock is fully paid. All the law now requires is that the stock be subscribed, and that a certain percentage thereof be paid in, and then the corporation can proceed to business and incur debts without calling upon the stockholders for further assessments. It is, in my judgment, a very pernicious policy, but that is a matter for the legislature, and not for the courts. There is no such thing as capital stock until it is issued and owned by the subscribers or purchasers. Relator's counsel insist that a corporation with $100,000 capital requires only $10,000 of it to be actually subscribed, and the other $90,000 may remain in the treasury, as "treasury stock." This $90,000 of treasury stock is obviously of no value as an asset. The directors cannot be compelled to issue it, and nobody can be compelled to buy it. Such a corporation would virtually have a $10,000 capital, and that all paid in, with no further liability on the part of those who have taken the $10,000, because their stock is fully paid up.

While the statute contains no express requirement that all the stock must be subscribed, we think it clearly con-

templates this, in order to constitute it a corporation *de jure*. We are not dealing with those cases where the courts have held corporations to be corporations *de facto*, though not *de jure*, where they have not complied with the law. In such cases stockholders are properly held estopped from setting up such defenses. We are dealing with a case where the secretary of state declines to recognize such a corporation as a *de jure* one until it has complied with all the requirements of the law. We think this conclusion is fully sustained by the reasoning in the case of *International Fair & Exposition Ass'n* v. *Walker*, 88 Mich. 62 (49 N. W. 1086), in which it was said, "The capital stock authorized is the lifeblood of the corporation." See, also, page 79 of that opinion. Undoubtedly, if the relator had filed its articles of association, the corporation would have been a *de facto* one. But the respondent very properly replied to relator's application to file these amendments, " I insist that you become a *de jure* corporation, as well as a *de facto* one."

Counsel quote a sentence from *American Mirror & Glass-Beveling Co.* v. *Bulkley*, 107 Mich. 447 (65 N. W. 291), in support of their contention. That case was written by the writer of this opinion. The sentence quoted is as follows:

" The act [the same one as that now under consideration] does not provide that the entire capital stock shall be subscribed as a condition precedent to its organization and the right to carry on business."

The defendant in that case had paid in full for her stock. The attempt was made to hold her for the stock which had not been subscribed. The logical conclusion from that case is that, had she been a party to the fraud in organizing the corporation and in carrying it on, without the issuance of the entire capital stock, she would have been liable. Standing alone, the sentence quoted might naturally bear the construction placed upon it by counsel; but, read in connection with the facts of the case,

it cannot be so construed. It was a case of a *de facto,* not a *de jure,* corporation.

For these reasons, the respondent was right in refusing to file the certificate of the amendment, and the writ is denied.

The other Justices concurred.