OPHIR CONSOL. MINES CO. et al. v. BRYNTESON.

(Circuit Court of Appeals, Seventh Circuit.  February 6, 1906.)

No. 1,191.

1. CONTRACTS—CONSIDERATION—COMPROMISE OF DISPUTED OBLIGATION.

Certificates of stock in defendant corporation were delivered by its agent to plaintiff pursuant to an offer to sell him the stock at a stated price. He did not pay for the stock, but agreed to visit the office of the company. When he did so he returned the stock and refused to complete the purchase, on the ground that the current price at which it was being sold was less than that stated to him. Thereupon after further negotiations, a written contract for the sale and purchase of the stock was entered into for a smaller price, and by which the corporation and its president agreed to take the stock back and refund the money

paid therefor with interest at a certain time, if plaintiff was not then satisfied to retain the same. *Held*, that such contract was not without consideration, because of the prior transaction which was not treated by either party as having created a binding contract, and was not in any event recognized as such by plaintiff.

2. CORPORATIONS—VALIDITY OF CONTRACT—CONTRACT FOR SALE OR RETURN OF STOCK.

Such contract was one of conditional sale only, or what is known as a "sale or return" contract, by which no absolute title passed, and was not ultra vires the corporation, as in violation of Mill's Ann. St. Colo. § 485, which prohibits the purchase by corporations of their own stock, except when forfeited for nonpayment of assessments; nor did it involve any use of corporate funds which could be detrimental to stockholders.

3. SAME—INTEREST—VALIDITY OF AGREEMENT TO PAY.

The agreement to pay interest for the use of the money paid for the stock, so long as the purchaser's option continued, was valid.

4. CONTRACT—JOINT CONTRACTORS—CONSIDERATION.

A joint contract by a corporation and its president, individually, to refund the money paid to the corporation on a conditional purchase of its stock, in case the purchaser exercised his option to return the same, is based upon a sufficient consideration, and is valid as to both makers.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

The defendant in error, John Brynteson, was the plaintiff below (hereinafter referred to as plaintiff), in an action against the Ophir Consolidated Mines Company and J. O. Buckley, plaintiffs in error (hereinafter referred to as defendants), to recover the purchase price of stock in the defendant corporation and interest thereon, pursuant to express contract of "sale or return." Upon the trial before a jury, verdict was entered against the defendants, by direction of the court, and this writ of error is prosecuted from the judgment thereupon. The bill of exceptions preserves all the evidence received, and the substantial facts are undisputed. The capital stock of the defendant corporation was $3,000,000, in shares of $1, of which 1,700,000 shares were held in the treasury for sale to raise funds for improvements. For 50,000 of these treasury shares the plaintiff paid $15,000, under the following contract:

"Whereas John Brynteson of Campbell, California, has paid Fifteen Thousand (15,000) Dollars for Fifty Thousand shares of the stock of the Ophir Consolidated Mines Company, as evidenced by certificates number 1090, 1091, 1092, 1093, 1094, 1095, 1096, 1097, 1098, and 1099, issued to him April 2d, 1902; therefore, be it understood, that the undersigned hereby bind themselves to return to said John Brynteson said Fifteen Thousand (15,000) Dollars, with interest on the same at the rate of six per cent. per annum, eighteen months after the date hereof, if said John Brynteson be not satisfied with aforesaid investment.

"Dated Milwaukee, Wisconsin, this 7th day of April, A. D. 1902.
"The Ophir Consolidated Mines Company,
"By J. O. Buckley, President.
"Countersigned: Thomas F. Somers, Secretary.
"J. O. and W. S. Buckley."

Within the time stipulated in this agreement the plaintiff gave notice that he was not satisfied with the investment, tendered return of the stock, and demanded that the purchase money, with interest, be returned to him October 7, 1903. It is stated in the brief for the plaintiffs in error that W. S. Buckley, one of the signers of the contract, "died shortly after the action was commenced and was not served with process."

With these facts conceded, the contentions are that the agreement is invalid for want of consideration and other causes, and the only additional

facts involved in this review relate either to the defense of want of consideration or the attitude of the parties respectively; and in so far as they bear upon one or the other contention, such facts are stated in the opinion.

Adolph Huebschmann, for plaintiffs in error.
W. J. Turner, for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge. The meaning of the agreement in suit is unquestionable. It distinctly provides that the purchaser may, within the stipulated period, return the stock, and thus avoid the sale, and recover the purchase money with interest, if "not satisfied with aforesaid investment." So the verdict was rightly directed in favor of the plaintiff below, if that agreement was binding upon the defendants. The assignments of error rest upon these propositions: (1) That the contract for return of the stock is void for want of consideration; (2) that it is ultra vires the corporation; (3) that it is malum in se, as in fraud of other stockholders and creditors of the corporation; (4) that the provision to pay interest on the purchase money is void; and (5) that in terms the agreement is a joint obligation, and "no recovery can be had against the defendant J. O. Buckley." Further assignments are based upon the rejection of testimony, but the testimony tendered was obviously immaterial under the view stated below of the issues involved.

1. The alleged want of consideration for the agreement is predicated upon the fact of a pre-existing transaction between the parties for unconditional sale of the stock at 32 cents per share. It appears that one Henrickson, who was interested in the corporation defendant, met the plaintiff on the way to Ishpeming, Mich., discussed with him the value of the mine and the opportunity for an investment. The plaintiff was acquainted with mining investments, but not with the mine in question, and entertained a proposal to take a block of shares at the value named, 32 cents. Upon their arrival at Ishpeming, Henrickson communicated with the president of the corporation, by telephone, to have 50,000 shares of the stock forwarded for sale to the plaintiff at such rate. The shares were mailed to Henrickson accordingly, on April 2, 1902, for delivery upon the proposed sale, and a letter was sent to the plaintiff stating that they were so forwarded for purchase by him at 32 cents per share. Henrickson handed the stock to the plaintiff, with the understanding upon his part that the price was to be paid at Milwaukee within a few days. What was said by the plaintiff by way of acceptance is not definitely stated; nor is it deemed material, in view of the subsequent transaction, whether present acceptance of the terms offered was intended or understood by him. When the plaintiff arrived at the office of the corporation in Milwaukee, on April 7, 1902, the witnesses concur in their testimony that he handed the stock to the president, stating that he was informed of recent sales at much lower price than the offer to him, and that he would not purchase at the price named. After considerable negotiation the plaintiff was persuaded to take the stock at $15,000, upon the conditions stated in the agreement, and the bargain was consummated accordingly.

The witness Buckley (the president and defendant) thus testifies: "I readily saw or thought that I could not get 32 cents, so I offered to make it even $15,000, 30 cents a share, and offered to him this contract that we would pay back the money" at such time as he named.

The contention is that the bargain was closed at Ishpeming for 32 cents per share, with payment absolutely due at that rate on arrival at Milwaukee, so that payment of $15,000 as the purchase money, on April 7th, furnished no consideration for the new contract of that date. The general rule which is invoked to that end is thus stated in Fire Insurance Association v. Wickham, 141 U. S. 564, 577, 12 Sup. Ct. 84, 87, 35 L. Ed. 860:

"The rule is well established that, where the facts show clearly a certain sum to be due from one person to another, a release of the entire sum upon payment of part is without consideration, and the creditor may still sue and recover the residue. If there be a bona fide dispute as to the amount due, such dispute may be the subject of a compromise and payment of a certain sum as a satisfaction of the entire claim, but where a larger sum is admitted to be due, or the circumstances of the case show there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered as a compromise, but will be treated as without consideration and void."

Also, the exemplification of this rule, in Palmer v. Yager, 20 Wis. 91, 98, holding that the right of parties to abolish a contract and substitute another in its place, is subject to the requirement of a new consideration for the substituted contract—some "distinct benefit accruing to the creditor" party—or that the substitution be made "upon the compromise of a doubtful or disputed claim."

Without considering the question whether the rule and authorities referred to are applicable to these bargainings for stock, upon either theory of the testimony, we are clearly of opinion that the contention is untenable, for at least two reasons: First, because the proof establishes, as we believe, only the single purchase of April 7th; and, second, on the assumption that a prima facie prior obligation to purchase the stock at 32 cents per share, appeared from the Ishpeming transaction, the ultimate compromise of "a bona fide dispute". (Fire Insurance Association v. Wickham, supra), exempts the case from the operation of the rule cited. That there was no meeting of the minds of the parties in an unconditional purchase at Ishpeming is undoubted, in the light of the attitude of both principals at the meeting in Milwaukee. The fact that the plaintiff received the stock at Ishpeming, when it arrived pursuant to negotiations, which is the main reliance for the alleged prior contract, was not treated by either party as an acceptance of the Ishpeming offer; nor can it be inferred from the conduct or expressions of either party that a bargain had been closed, or that either the plaintiff or the representative of the corporation so understood the prior transaction. In the absence of evidence of such understanding by both parties to the negotiation at Ishpeming, no purchase can be implied from the testimony, and the parties were free to conclude a bargain without reference to that transaction. Aside from this view, however, the consideration was sufficient for new terms of sale by way of compromise. Not only was the fact of acceptance of the Ishpeming

offer disputable, to say the least, but the refusal of the plaintiff to purchase the stock, when he arrived at Milwaukee, was expressly placed upon the ground, in effect, that the previous representations as to the selling price were not true. Thus the elements of a bona fide dispute of obligation to take the stock, under any assumed obligation in the mind of the parties, were there presented. Their force was either conceded or plainly recognized in offering the new terms, and the final arrangement thereupon is not open to objection arising out of the alleged pre-existing contract.

2. The corporation defendant is incorporated under the laws of Colorado, and it is contended that the contract violates section 485, Mills' Ann. St. Colo., which prohibits the use by corporations of any of their funds "for the purchase of stock in their own company or corporation, except such as may be forfeited for the nonpayment of assessments thereon." This agreement is in no sense within the meaning or object of the provision referred to. The stock was held in the treasury of the company to raise funds for improvements, upon such terms of sale as were adopted by the president. The right to so hold and own the stock remains in the corporation until an absolute sale is made. No such sale arose under the agreement in suit. It was of the well-recognized class, known as a contract of "sale or return," as defined in Sturm v. Boker, 150 U. S. 312, 328, 14 Sup. Ct. 99, 104, 37 L. Ed. 1093, where the title passes for the time being, but subject to the option of the purchaser to rescind and return the property within the time stipulated. With the exercise of the option the contract of sale terminates and the right and title of the corporation is restored to its original status. No sale has been accomplished, and no purchase or repurchase arises upon the part of the corporation through this return of its unsold stock. As held in the recent Minnesota case of Vent v. Duluth Coffee & Spice Co., 67 N. W. 70, such transaction is not ultra vires, within the rule applicable to purchase of stock. In the case of Tolman v. New Mexico, etc., Mining Co., 4 Dak. 4, 22 N. W. 505, cited contra, the contract under consideration appears to have been one of actual repurchase of stock by the corporation, and the ruling is deemed inapplicable to the present controversy.

3. The contention that the contract was fraudulent as to other stockholders and creditors requires no discussion, under the foregoing view that no sale of stock was effected, so that the agreement to repay the investment for purchase money, if the stock was not purchased, called for no diversion of corporate funds—plainly distinguishable from the cases cited of release of subscribing stockholders.

4. The agreement provides for repayment of the purchase money, with interest, upon return of the stock, and objection is raised to the promise of interest as invalid. No distinct ground for the objection is stated, and we are impressed with no view which supports it. The promise implies an understanding that the corporation was to have the use of the money, pending the continuance of the option, instead of retaining it on deposit, and for such use it was surely competent for the parties to agree upon the payment of interest.

5. The objection to the recovery against the defendant Buckley,

143 F.—53

on the ground that a joint obligation is created by the terms of the contract, is without force, under the foregoing view that the contract is not ultra vires the corporation. The contract is joint only in respect of the promise to return or repay the $15,000 and interest, and the consideration moving between the corporation defendant and the promisee is sufficient to support the joint obligation when the indebtedness accrues.

The several assignments of error are overruled, and the judgment of the Circuit Court is affirmed.