## In re RACINE AUTO TIRE CO.

### MADSEN et al. v. SMITH.

(Circuit Court of Appeals, Seventh Circuit. June 21, 1923.)

#### No. 3272.

Licenses ⟨⟩39—Purchasers of preferred stock held estopped to claim status of general creditors by rescinding purchases under Blue Sky Law.

Even if the purchasers of preferred stock in a corporation which subsequently became bankrupt were entitled, as against the corporation, to rescind their contract for failure of the corporation to comply with the Wisconsin Blue Sky Law (St. Wis. 1917, § 1753—51, 1, [b]), it was optional with them to do so, and they were estopped as against the creditors of the bankrupt to make such rescission and claim a standing as general unsecured creditors, after they had repeatedly ratified their position as stockholders by accepting dividends, attending stockholders' meetings or giving proxies to others, and surrendering their certificates of stock and accepting new ones, and where they did not attempt to withdraw until more than two years had elapsed and an adjudication in bankruptcy had occurred.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

· In the matter of Racine Auto Tire Company, bankrupt. From a decree denying claims by Helmuth Madsen and others, opposed by Harold O. Smith, as trustee in bankruptcy, to have the amounts paid for preferred stock of the bankrupt allowed as claims of unsecured creditors, the claimants appeal. Affirmed.

Earl F. Buelow and C. A. Erikson, both of Racine, Wis., for appellants.

E. B. Hand, of Racine, Wis., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Bankrupt was incorporated under the laws of Wisconsin, November 12, 1912. Its capital stock was increased October 28, 1914, to $300,000, and again increased January 2, 1917, to $500,000. On May 6, 1919, there was still another issue of $200,000 of second preferred stock, a part of which was sold prior to August 1, 1919, and some subsequent thereto. The adjudication in bankruptcy occurred February 9, 1922. Appellants, employees of the bankrupt, purchased stock at various times between May 28, 1919, and January 9, 1920. They seek to have the amounts paid for this second preferred stock allowed as claims of unsecured creditors, grounding their position upon bankrupt's alleged failure to comply with the provisions of section 1753–51, 1, (b), of the Revised Statutes of Wisconsin of 1917, a part of the "Blue Sky Law" of that state. This section reads:

"Except as otherwise provided by law, every corporation, association, copartnership or individual, herein termed company, organized, proposed to be organized, or which shall hereafter be organized, within or without this state, whether incorporated or unincorporated, which shall in this state, directly or indirectly, sell or negotiate for the sale of any stocks, bonds or other evidences of indebtedness, or property or of interest in itself, all of which are in this section termed securities, upon which sale or proposed sale the whole or any part of the proceeds are used, or to be used, directly or indirectly, for the payment of any commissions or other expenses in excess of twenty-five hundred dollars, incidental to the organization or promotion of any such company, shall be subject to this section."

These subscribers for preferred stock received the certificates, which they retained until after adjudication in bankruptcy. They received dividends and either attended stockholders' meetings or executed proxies to others to represent them. They accepted new certificates in lieu of old ones when the capital stock was later increased, and have not offered to return the dividends by them received. Subsequent to the issuance of the second preferred stock, financial statements were given to Dun and Bradstreet Mercantile Agencies as a basis for credit. In these statements, the second preferred stock was shown as fully paid and outstanding. The indebtedness on December 31, 1919, was $647,442.61; on December 31, 1920, it was $1,011,740.86. At the date of bankruptcy, the unsecured claims were $1,443,364.10, in addition to over $100,000 of secured claims, and this was exclusive of the claims of stockholders who held claims similar to appellants. It was conceded that no permit was obtained from the state to sell this second preferred stock; appellee contending that the issuance

and sale of the stock was lawful without any permit, because part of it was sold prior to August 1, 1919, and because its issuance was authorized prior to August 1, 1919. Appellee also urged nonapplication of this section, for the reason that there was not expended $2,000 in the sale of the second preferred stock.

Appellants, however, insisted that the statute required a permit, not only when the expense of selling the stock or bonds involved exceeded $2,000, but that it also covered issues where the expenses of organizing the corporation, in addition to the commissions paid for the sale of such securities, exceeded $2,000. They took the position that the failure of the company to secure the necessary permit from the state made all sales of stock void ab initio and that appellants, never having been stockholders, were at all times creditors. Citing Pruitt v. Oklahoma Company, 39 Okl. 509, 135 Pac. 730; Montgomery v. Pickering, 116 Mass. 227, and 14 C. J. 501, they asserted that an offer to return the dividends prior to filing the claims was unnecessary.

It is conceded that, irrespective of the claims of appellants and others similarly situated, the bankrupt estate is hopelessly insolvent and nothing can be realized by appellants, unless they are placed upon the same footing as general creditors. But, assuming for the purpose of this argument, that appellants' position respecting the construction of section 1753 is correct, does it follow that upon the facts related they are entitled to occupy the same position as general creditors? Do not the facts call for the application of the doctrine of estoppel en pais? Grant that appellants, as against the Racine Auto Tire Company, would be entitled to recover the money paid for their stock does it follow that they occupy as firm footing in their stand against the general creditors?

Even where the stockholder may repudiate the contract because of the provisions of the "Blue Sky Law," it is optional with him to do so. He may insist upon his purchase and retain his stock. Certainly the corporation that sold its stock in violation of the statutes of the state cannot later compel a rescission. How long, then, may the stockholder wait, as against creditors of the corporation, before he is estopped from asserting his right to rescind? What action, if any, can a stockholder thus take, which, as against the general creditors, would make it necessary for a court to refuse the privilege of withdrawal from the position of a preferred stockholder to become an unsecured creditor? These are the questions determinative of this issue of estoppel en pais.

Every element necessary to make out an equitable estoppel here appears: (a) Claimants knowingly assumed a position at variance with the one they now assert. (b) They repeatedly ratified that position in accepting dividends, in attending stockholders' meetings or giving proxies to others to represent them, and in surrendering their certificates of stock and accepting new ones. They profited thereby to the extent of the dividends paid. They did not attempt to withdraw until more than two years had elapsed and an adjudication in bankruptcy had occurred. (d) To permit them now, when it better serves their

purpose, to assume the rôle of creditors, would, as against these general creditors, be inequitable, unconscionable and unjust.

The following authorities support the conclusion that claimants are now concluded as against the general creditors from asserting they are not stockholders: Thompson on Corporations, vol. 1 (2d Ed.) § 736; In re Morris Bros. (D. C.) 282 Fed. 670; Allen v. Commercial National Bank of Detroit, 191 Fed. 97, 111 C. C. A. 577; Blien v. Rand, 77 Minn. 110, 79 N. W. 606, 46 L. R. A. 618; Palmer v. Bank of Zumbrota, 72 Minn. 266, 75 N. W. 380; Matthews Bros. v. Pullen (C. C. A.) 268 Fed. 827; In re Desnoyers Shoe Co., 224 Fed. 373, 140 C. C. A. 58; Atlanta & Walworth Ass'n v. Smith, 141 Wis. 377, 123 N. W. 106, 32 L. R. A. (N. S.) 137, 135 Am. St. Rep. 42.

The decree is affirmed.