## In re AMERICAN ALUMINUM METAL PRODUCTS CO.

(District Court, S. D. California, S. D. February 4, 1926.)

No. 5475.

1. **Corporations** ⟨⟩262(2)—**Parties to void stock subscription contract held estopped to assert invalidity as against innocent creditors of corporation.**

Under the law of California, innocent creditors of a corporation may invoke the conduct of the parties to a void subscription contract as an estoppel against their asserting its invalidity to defeat just claims of creditors.

2. **Bankruptcy** ⟨⟩145(2), 312—**Stockholder of bankrupt corporation, whose subscription contract was void under statute, held estopped to surrender stock and claim as creditor (California Corporate Securities Act, § 12).**

As against creditors, who have a right to rely on the California doctrine making the capital of a corporation a trust fund for its creditors, a stockholder, who became a director and president of the corporation, though his contract of subscription was void, because contrary to section 12 of the California Corporate Securities Act (St. 1917, p. 679), is estopped to surrender his stock and claim as a creditor on bankruptcy of the corporation.

In Bankruptcy. In the matter of the American Aluminum Metal Products Company, bankrupt. On review of order of referee disallowing claims of B. A. Dempsey. Affirmed.

The referee's certificate on review states that most of the facts upon which the said order was based were stipulated to, and a summary of the facts and evidence on which the order was based is as follows:

"(1) That the bankrupt corporation was a corporation carrying on the business of manufacturing aluminum products.

"(2) That on August 9, 1922, the claimant Dempsey entered into a contract (Exhibit B) with the bankrupt corporation for the purchase of 150 shares of stock of the corporation for the full par value of $15,000, subject to the right of either party to cancel the sale at any time between 6 months and 18 months from the date of the said contract, on giving 90 days' written notice of intention so to do, in which case the money so paid was to be returned to the claimant Dempsey, together with 7 per cent. interest thereon.

"(3) That by the same contract the claimant Dempsey also agreed to subscribe for 100 additional shares of stock, and to pay therefor by giving to the corporation two promissory notes, at the value of $5,000 each, the time of payment to be extended to 4 years, should the claimant Dempsey so request.

"(4) That no application to issue stock, containing a copy of the said contract of August 9, 1922 (Exhibit B), was ever made to the commissioner of corporations, and that the only effective permit (Exhibit A) to sell stock in existence at and subsequent to the date of the said contract was a permit which allowed only 'sale for cash.'

"(5) That at the date of the said contract, and in pursuance thereof, the said shares were issued to the claimant, B. A. Dempsey, and the $15,000 cash paid, and two promissory notes, for $5,000 each, made and delivered by him to the corporation.

"(6) That the said promissory notes were discounted by the corporation, which received the full face value of $10,000 therefor.

"(7) That subsequently judgment was taken against the claimant Dempsey upon both said promissory notes by the holders thereof.

"(8) That the corporation was solvent at all times previous to the actual filing of the petition in bankruptcy.

"(9) That practically all of the liabilities (about $180,000) of the corporation were incurred previously to the month of January, 1923.

"(10) That on January 22, 1923, claimant Dempsey was appointed a director and president of the corporation.

"(11) That the factory of the bankrupt corporation ceased operating for good on February 1, 1923.

"(12) That claimant Dempsey wrote a letter on March 8, 1923, to the board of directors of said corporation, canceling the sale of said contract of August 9, 1922, and returning stock certificates received thereunder, and at meetings of the board of directors held on April 7 and 24, 1923, the cancellation of the said contract was accepted, and the said stock certificates marked 'canceled' on the corporation stock book, and the liability of the corporation to Dempsey by reason of said cancellation acknowledged.

"(13) That after the 9th day of August, 1922, and before the report of the rescission given by Dempsey of the agreement of August 9, 1922, the corporation incurred an indebtedness exceeding in amount the claims of Mr. Dempsey filed in this case, and that that indebtedness has not been paid.

"(14) That the petition in bankruptcy of said corporation was filed on June 4, 1923.

"The question presented on this review is whether, notwithstanding that the issues of the 150 shares and 100 shares of stock to Dempsey are void under section 12 of the Corporate Securities Act, they not being issued in compliance with the conditions of such issue laid down in the permit of the corporation commissioner, the claimant Dempsey is estopped, as against creditors of the bankrupt corporation, under the trust fund doctrine, from denying that he is a stockholder and from setting up his claim for the purchase price of said stock."

Turnbull, Heffron & Kelley, of Los Angeles, Cal., for petitioning creditors.

W. T. Craig, of Los Angeles, Cal., for trustee.

Wood, Janeway & Pratt, of Los Angeles, Cal., for claimant Dempsey.

McCORMICK, District Judge. In my opinion, under the stipulated facts as shown by the referee's certificate of review, the claimant Dempsey is estopped, as against the trustee in bankruptcy and the general creditors of the bankrupt corporation, from transforming himself from a stockholder in American Aluminum Metal Products Company, a corporation, into a creditor thereof, to the prejudice and damage of innocent general creditors of the bankrupt corporation, and claimant is therefore precluded from asserting any right against the bankrupt estate for the return of the purchase price of the corporate stock which he obtained under the contract of August 9, 1922.

Even if it be true that the issue of the stock to Dempsey under the contract of August 9, 1922, was void, because contrary to section 12 of the California Corporate Securities Act (St. 1917, p. 679), such invalidity cannot operate to impair and destroy the rights of innocent creditors, who knew nothing about the secret subscription contract, and who had a right to rely upon the trust fund doctrine of California in dealing with the corporation. Vermont Marble Co. v. Declez, 135 Cal. 579, 67 P. 1057, 56 L. R. A. 728, 87 Am. St. Rep. 143; R. H. Herron Co. v. Shaw, 165 Cal. 668, 133 P. 488, Ann. Cas. 1915A, 1265; Handley v. Stutz, 139 U. S. 417, 11 S. Ct. 117, 34 L. Ed. 706.

[1] It is well settled in California that, while estoppel is unavailable as a plea in an action between parties to a void stock subscription contract, this rule has an exception that permits innocent creditors to invoke the conduct of the parties to the void contract as an estoppel and barrier against their asserting the invalidity of their contract, so as to defeat just claims of innocent creditors. Reno v. American Ice Machine Co. (Cal. App.) 237 P. 784; Moore v. Moffatt, 188 Cal. 1, 204 P. 220.

[2] The conduct and actions of Mr. Dempsey in making the subscription agreement of August 9, 1922, under which he purchased the stock of the American Metal Products Company, and paid for it partly in cash and partly with promissory notes that were presently discounted by the corporation for cash, together with his acceptance of stock certificates issued from the company's books, and his acceptance of the position and salary of superintendent of the company's factory for several months, and the further acceptance of the office of president and director of the corporation, all under the agreement of August 9, 1922, which he continued to perform without objection until March 8, 1923, should and do estop him from repudiating his agreement to the prejudice of innocent third persons, and from claiming funds which induced innocent creditors to deal with the corporation and to part with value. To allow Mr. Dempsey's claim for the return of his money as against the just claims of the general creditors of the corporation, who were misled and deceived by his voluntary conduct, would be inequitable, unconscionable, unjust, and legally unwarrantable. In re Racine Auto Tire Co. (C. C. A.) 290 F. 939; Allen v. Commercial National Bank of Detroit, 191 F. 97,

111 C. C. A. 577; In re Desnoyers Shoe Co., 224 F. 372, 140 C. C. A. 58; Fletcher, Cyclopedia Corporations, vol. 2, § 716; Schulte v. Boulevard Gardens Land Co., 164 Cal. 464, 470, 129 P. 582, 44 L. R. A. (N. S.) 156, Ann. Cas. 1914B, 1013; Tidewater Southern Ry. Co. v. Vance, 31 Cal. App. 503, 160 P. 1097; 6 California Jurisprudence, p. 768.

Cases cited by claimant, of which California Bank v. Kennedy, 167 U. S. 362, 17 S. Ct. 831, 42 L. Ed. 198, and Concord First National Bank v. Hawkins, 174 U. S. 364, 19 S. Ct. 739, 43 L. Ed. 1007, are examples, to my mind are inapplicable to the instant case. In those two cases, and in all similar cases cited by claimant, it appears that the corporations dealt with were either national banks or companies functioning in jurisdictions where the trust fund doctrine of California corporations did not exist. At least none of these decisions seem to have considered the applicability of the trust fund doctrine as such has been uniformly applied to domestic corporations by the California courts. Moreover, in most, if not all, of the cases cited by claimant, the parties to the contract or their successors were the suitors, and the courts held that, the contract being void ab initio, it was totally ineffectual and unavailable to support any right or claim of any of the parties thereto.

But in the instant case there is an entirely different situation; for here it is the innocent creditors who are opposing an effort of one of the contracting parties to reap benefits on account of the invalidity of his own agreement, to the great prejudice and damage of such innocent creditors, who, the California decisions say, had a right to rely upon the apparent status of Dempsey as a stockholder, and who can invoke the doctrine of estoppel as against the claim of Dempsey.

The order of the referee, dated November 13, 1925, disallowing certain claims of B. A. Dempsey, is affirmed.