### In re BUILDERS' FINANCE ASS'N, Inc.

District Court, S. D. California, S. D.
February 6, 1928.

No. 10364.

1. Bankruptcy ⬤�逐98—Findings of master are before court for decision on exceptions, where reference was made without consent of parties.

Where order of reference is not made with consent of parties, findings of fact of master, as well as his legal conclusions, are properly before the court on exceptions to the master's report.

2. Bankruptcy ⬤⟺54—Claims against corporation of persons illegally purchasing stock must be considered in determining whether corporation was solvent within meaning of Bankruptcy Act (Bankr. Act, §§ 1 (15), 3 (4), 11 USCA §§ 1 (15), 21 (4); Corporate Securities Act, Cal.).

Claims against corporation of stockholders who purchased stock with property instead of cash, in violation of permit given under corporate Securities Act, Cal. (St. Cal. 1917, p. 673), must be considered as claims against corporation for money had and received in determining whether corporation was insolvent, within meaning of Bankruptcy Act, §§ 1 (15), 3 (4), 11 USCA §§ 1 (15), 21 (4), notwithstanding general rule that courts will not afford relief to parties in pari delicto; inference being that the purchasers of stock acted in good faith, and that their wrong was not of equal degree with that of the corporation.

3. Courts ⬤⟺365 (3)—Decisions of state courts are not controlling in bankruptcy matters, but rather principles of equity as applied in federal courts.

Decisions of the state courts in bankruptcy matters are not controlling, but subject is controlled by principles of equity as applied in the federal courts; subject-matter being wholly within federal court's jurisdiction.

4. Bankruptcy ⬤⟺54—Trust fund doctrine held not applicable to prevent consideration of claims against corporation of persons purchasing stock in violation of Blue Sky Law in determining corporation's solvency (St. Cal. 1917, p. 673; Bankruptcy Act, §§ 1 (15), 3 (4), 11 USCA §§ 1 (15), 21 (4).

Trust fund doctrine *held* not applicable to prevent consideration of claims against corporation of persons purchasing stock in violation of California Blue Sky Law (St. Cal. 1917, p. 673), in determining whether such claims could be considered on question of corporation's solvency under Bankruptcy Act, §§ 1 (15), 3 (4), 11 USCA §§ 1 (15), 21 (4).

In Bankruptcy. Petition by creditors to secure an adjudication of bankruptcy of the Builders' Finance Association, Inc. On exceptions of the creditors to the findings of fact and report of the special master, holding the corporation solvent. Special master's report set aside, and corporation adjudged bankrupt.

F. H. Whitfield and Hubert F. Laugharn, both of Los Angeles, Cal., for petitioning creditors.

Charles W. Fourl, of Los Angeles, Cal., for intervening creditor.

Meserve, Mumper, Hughes & Robertson, of Los Angeles, Cal., for bankrupt.

McCORMICK, District Judge. This issue arises on exceptions to the findings of fact and report of the special master, wherein he concludes that the Builders' Finance Association, Inc., a corporation, was solvent

on October 18, 1927, the date on which a creditors' petition in bankruptcy was filed in this court asking that said corporation be declared bankrupt. The alleged bankrupt will be referred to herein as the association. [1] This matter was referred to the special master upon motion of the association for the purpose of determining the issues raised by the answer and specifically whether the association was insolvent and should be adjudged bankrupt pursuant to the National Bankruptcy Law (11 USCA). The order of reference was not made by consent of the parties, and of course, under such circumstances, not only the legal conclusions drawn by the master, but his findings of fact as well, are properly before the court for decision under the exceptions on file. These exceptions are several, but under the conclusions reached it is only necessary to consider those which find and determine that the association was solvent at the time of the filing of the creditors' petition, and that therefore the petitioning and intervening creditors are not entitled to have the association adjudged a bankrupt within the meaning of the Bankruptcy Law.

The master bases his findings and decision of solvency upon his determination that certain transfers or exchanges of stock of the association, amounting in the aggregate to $214,567, were void, because made contrary to the terms of the California Blue Sky Law (St. Cal. 1917, p. 673), and that because of such illegal and void transactions the purchasers are not valid stockholders, and have no provable claims against the association on account of the value of the property which they transferred and delivered at the times of such purported transactions, and that their claims cannot be considered as liabilities of the association in determining whether it is insolvent, as defined in subdivision 15 of section 1 of the Bankruptcy Law (11 USCA § 1, subd. 15). If these claims are liabilities, the insolvency of the association is unquestionable.

It should be noted that the bankruptcy of the association is wholly dependent upon the question of insolvency, as it is a matter of record in this court that on October 10, 1927, in cause No. N–105–J, being a suit in equity at the instance of a creditor of the association, a receiver was appointed and thereafter such receiver was put in charge of all of the property of said association. See subdivision 4, section 3, of the National Bankruptcy Law (11 USCA § 21, subd. 4).

The report of the master contains a stipulation of facts made by the parties which shows the manner and details of the stock purchases that are the basis of the master's decision. Such stipulation recites: "It is hereby stipulated, * * * for the purpose of this hearing, that * * * the court may consider and pass upon the effect of the following testimony upon the following agreed statement": That the evidence would substantially be "that the stock purchaser assigned mortgages or conveyed property and delivered the same to the defendant company after, but substantially at the same time he signed a stock subscription in the same form as Exhibit 12 or 26, already offered in evidence; that at the same time and place a check of the defendant company was made out in favor of the purchaser for the amount of his property, and was immediately indorsed upon the back by the stock purchaser and left with the company and treated by the parties as payment of the subscription agreement; that at the same time and place certificates of stock were issued in favor of the prospective stockholder and were received by him, and the stock certificate stubs were signed by said prospective stock purchaser; that the prospective purchaser did not take any money into the office or take any money out of the office in connection with said stock purchase, other than as herein indicated; that the purchasers were first told that the permit authorized the sale for cash only, and were asked to purchase stock for cash, and stated that they had no cash; that they had property or mortgages; that thereupon the company agreed to issue its check for the property or mortgages, and the purchaser agreed to indorse said check as purchase price for the stock; that the check issued by the company was immediately indorsed back to the company; that all of said transaction above mentioned was completed at substantially the same time; that from the time of said transaction to the time of this hearing said stockholder has not returned nor offered to return said stock to the company, has not demanded the return of his notes, mortgages, or other property delivered to the company, has received dividends on said stock, and has not exercised any acts of ownership over the property formerly owned by him; that said stock purchaser received the original of the stock subscription agreement, which was delivered to him, at the time of the signing of said subscription agreement, and retained by him."

It was through such transactions described in the stipulation that many persons desiring to subscribe for and purchase the

stock of the association received stock certificates from the association aggregating 2,138 shares of the preferred and 767 shares of the common stock of said company, and in consideration therefor transferred and delivered to the association their property, amounting to the sum of $214,567. There can be no doubt, under the California Corporate Securities Act (St. Cal. 1917, p. 673) and the applicable decisional interpretations thereof by the California courts, that the stock sales, having been made in violation of the Corporate Securities Act, are illegal and void, and that the courts will afford no relief to either party in an action predicated and founded upon such illegal and void sales. Domenigoni v. Imperial Live Stock & Mortgage Co., 189 Cal. 467, 209 P. 36.

[2] But in this matter at this time we are not considering, or called upon to consider, whether the purchasers at such stock sales are entitled to relief against the association other than an adjudication in bankruptcy because of the insolvency of the association. It may be that, when the purchasers seek to assert relief against the association that will affect or be prejudicial to the rights of other general creditors of the association, estoppel may conclude them from enforcing their claims against the association until other general creditors have received complete satisfaction of their claims, but no such situation exists at this time. The sole question here is whether the purchasers are in pari delicto with the association, so as to destroy their claims against the association for money had and received, and thus eliminate such claims as liabilities of the association, which must be considered in determining whether it is insolvent within the meaning of the National Bankruptcy Law. The Corporation Commissioner's permit authorized the association to sell its stock for cash only.

The provisions of the Blue Sky Law requiring that corporate securities be sold in strict conformity with the permit of the commissioner of corporations is for the benefit of the public, so as to prevent the sale by corporations and their agents of spurious and illegal stock and to safeguard the purchasers against the perpetration of fraud by the seller in corporate stock sales. There is nothing in the agreed facts of this matter that justifies an inference or finding that the purchasers were perpetrating or attempting to perpetrate any fraud upon the corporation or any one. On the contrary, it is a fair inference from the fact that they transferred valuable property to the corporation and intended to pay full value for the corporate stock that their acts were done in good faith, and that while they may be in delicto with the corporation their wrong is not of equal degree with it. Pomeroy, in discussing the doctrine of pari delicto, says:

"Even where the contracting parties are in pari delicto, the courts may interfere from motives of public policy. Whenever public policy is considered as advanced by allowing either party to sue for relief against the transaction, then relief is given to him. In pursuance of this principle, and in compliance with the demands of a high public policy, equity may aid a party equally guilty with his opponent, not only by canceling and ordering the surrender of an executory agreement, but even by setting aside an executed contract, conveyance, or transfer, and decreeing the recovery back of money paid or property delivered in performance of the agreement. The cases in which this limitation may apply and the affirmative relief may thus be granted include the class of contracts which are intrinsically contrary to public policy— contracts in which the illegality itself consists in their opposition to public policy, and any other species of illegal contracts in which, from their peculiar circumstances, incidental and collateral motives of public policy require relief." Pomeroy, Equity Juris. (4th Ed.) § 941.

See, also, 13 Corpus Juris, p. 497 et seq.

It seems to me that if the rule contended for by the association were applied in this matter such application would defeat the very purpose which the Legislature must have had in mind in enacting the Blue Sky Law. See Karamanou v. Green Co., 80 N. H. 420, 124 A. 373; Reilly v. Clyne, 27 Ariz. 432, 234 P. 35, 40 A. L. R. 1005; Vercellini v. U. S. I. Realty Co., 158 Minn. 72, 196 N. W. 672; Stewart v. Wright (C. C. A.) 147 F. 321, 329; In re Racine Auto Tire Co. (C. C. A.) 290 F. 939.

[3] All of the California cases that have been cited and that have been examined hold that, where the parties to a contract are in pari delicto, none of them can seek the aid of a court of equity to the enforcement of any right or remedy under such contract. But, assuming the application of such decisions in bankruptcy matters such as this, the purchasers of the stock of the association would not base their claims against the association on their subscription contracts, but would ground them in equity as for money had and received. The decision of the California Supreme Court in the Domenigoni Case, supra, contains language which, if applicable and controlling in this matter, would

sustain the Master's findings and decision. But the decisions of state courts in bankruptcy matters are not controlling. The subject-matter being exclusively within the jurisdiction of the federal courts is to be controlled by the principles of equity as applied in the courts of the United States.

If the Domenigoni Case goes any further than to determine that neither party can enforce any rights under the contract, in my opinion it is against the weight of authority and the definitely established principles of equity jurisprudence. The wrong which the purchasers committed in the stock transactions was malum prohibitum and not malum in se, whereas the wrong committed by the corporation and its agents is not only malum prohibitum, but strongly leans towards malum in se. Under such circumstances for a court of equity to say that the corporation may retain the fruits of such transactions, and that the purchasers shall be dismissed empty-handed and stripped of their property does not seem to accord with established principles of equity as I understand them, and would destroy rather than conserve a sound public policy. See decision of the United States Supreme Court in Parkersburg v. Brown, 106 U. S. 487, at page 503, 1 S. Ct. 442, 27 L. Ed. 238, and also Smith v. Bach, 183 Cal. 259, at page 263, 191 P. 14.

[4] I do not regard the so-called trust fund doctrine as applied to the assets of a corporation by the California courts as pertinent to this matter at this time. As previously adverted to, it may be that in considering the allowance and payment of claims to creditors, the general creditors of the association other than stock purchasers will be entitled to invoke the trust fund doctrine as well as estoppel in pais for their benefit. But it is not necessary to decide that question at this time.

The decision of this court in American Aluminum Metal Products Co., 15 F.(2d) 234, 7 Am. Bankr. Rep. (N. S.) 314, I think has been misunderstood. That case was decided upon the principle of estoppel as applying to the claimant, and it was also the determination of the validity of a claim made after bankruptcy, and when there was no question as to the insolvency of the corporation. It is not in point in this matter at this time.

The foregoing views indicate that the court does not concur in the findings of fact and the report of the special master herein, but, on the contrary, the exceptions of the intervening creditor thereto are sustained, the special master's report is accordingly set aside and vacated, a finding of insolvency of the association on October 18, 1927, is made and said Builders' Finance Association, Inc., a corporation, is adjudged to be bankrupt. Solicitors for creditors will prepare an appropriate order in accordance herewith, and present the same under the rules of this court.